542 So.2d 1180 (1988)
Oddie JENKINS and Alvin Jenkins
v.
FORREST COUNTY GENERAL HOSPITAL; Hattiesburg Radiology Group, a Partnership; Dr. Marcus Hogan; and Dr. Hernando Velez.
No. 56508.
Supreme Court of Mississippi.
November 30, 1988.
Rehearing Denied March 22, 1989.
As Modified on Denial of Rehearing May 17, 1989.
Margaret P. Ellis, C.R. McRae, Pascagoula, for appellants.
R.W. Heidelberg and Robert J. Dambrino, III, Heidelberg, Sutherland & McKenzie, Hattiesburg, Jimmy B. Reynolds, Jr., and William C. Griffin, Steen, Reynolds, Dalehite & Currie, Jackson, S. Wayne Easterling, Easterling & Varnado, Dorance C. Aultman and Vicki Ruffin Leggett, Aultman, Tyner, McNeese, Weathers & Ruffin, Hattiesburg, for appellees.
En Banc.
SULLIVAN, Justice, for the Court:

I.
This appeal arises from the Circuit Court of Forrest County, Mississippi, wherein Alvin Jenkins and Oddie Jenkins, husband and wife, filed suit against Dr. A.D. Cromartie, Dr. Dorothy Gillespie, Dr. Hernando Velez and the Hattiesburg Radiology Group, Dr. Marcus Hogan, and Forrest County General Hospital. The suit claimed a negligent failure to diagnose Oddie Jenkins' twin pregnancy resulting in injuries; that Dr. Hogan was negligent in performing a 1977 tubal ligation which should have, but did not, render Oddie Jenkins incapable of becoming pregnant; and that all of the doctors and Forrest County General Hospital were agents, servants, employees and joint venturers of and with each other.
On September 11, 1984, the Jenkins filed a motion for the Circuit Judge Richard W. McKenzie to recuse himself on the grounds that his brother was a senior partner in the law firm of Heidelberg, Sutherland & McKenzie, representing the Hospital, and further because Judge McKenzie had openly stated that the medical community of Hattiesburg was responsible for his election. The Jenkins did not feel that they could get a fair trial against members of the medical community before a judge who believed himself beholden to that professional community. The motion to recuse was heard on October 18, 1984, at which time it was overruled and the judge proceeded to hear arguments on behalf of all defendants' motions for summary judgment. The Jenkins have cited Judge McKenzie's failure to recuse himself, inter alia, as reversible error. Because we agree and therefore reverse, we do not reach the other error assigned.

II.
On appeal and in their motion for recusal, the Jenkins allege that Judge McKenzie should have disqualified himself to avoid the appearance of impropriety. In support of their motion, the Jenkins cite *1181 the Judge's family relationship to a senior partner in the law firm representing Forrest County General Hospital and further allege that it was public knowledge that Judge McKenzie attributed his successful election to the medical community.

III.
The legal authority upon which this Court's decision must rest is contained in constitutional and statutory directives. Ruffin v. State, 481 So.2d 312 (Miss. 1985).
The Mississippi Constitution of 1890, Article VI, Section 165 speaks to the issue at hand and reads in applicable part:
No judge of any court shall preside on the trial of any cause, where the parties or either of them, shall be connected with him by affinity or consanguinity, or where he may be interested in the same, except by the consent of the judge and of the parties... .
Except for minor differences in wording and punctuation, the same language is used in Mississippi Code Annotated, § 9-1-11 (1972).
On October 25, 1974, the Mississippi Conference of Judges adopted the Code of Judicial Conduct. Canon 3 C(1)(d) states:
(1) A judge should disqualify himself in a proceeding in which his impartiality might reasonably be questioned, including but not limited to instances where:
(d) he or his spouse, or a person within the third degree of relationship to either of them, or the spouse of such a person:
(i) is a party to the proceeding, or an officer, director, or trustee of a party;
(ii) is acting as a lawyer in the proceeding.
The official Commentary adopted by that conference serves to offer guidance as to the circumstances in which a judge may be required to recuse himself. The Code's Commentary to Canon 3 C(1)(d)(i)(ii) reads as follows:
The fact that a lawyer in a proceeding is affiliated with a law firm with which a lawyer-relative of the judge is affiliated does not of itself disqualify the judge. Under appropriate circumstances, the fact that "his impartiality might reasonably be questioned" under Canon 3 C(1), or that the lawyer-relative is known by the judge to have an interest in the law firm that could be "substantially affected by the outcome of the proceeding" under Canon 3 C(1)(d)(iii) may require his disqualification.
While it may be true that such a broad qualification is not justified in every instance wherein a relative of a judge is affiliated with a law firm that is involved in a proceeding, the situation in this case concerns whether Judge McKenzie's "impartiality might reasonably be questioned" under Canon 3 C(1). We feel that such a situation exists here.
Recently we reiterated and modified our rule on this matter so as to conform to Canon 3 C(1) of the Code of Judicial Conduct. Cantrell v. State, 507 So.2d 325 (Miss. 1987).
In Rutland v. Pridgen, 493 So.2d 952, 954 (Miss. 1986), we stated:
In Ruffin v. State, 481 So.2d 312 (Miss. 1984 [sic], we said, "When a judge is not disqualified under § 165 of the Mississippi Constitution, or § 9-1-11, the propriety of his or her sitting is a question to review only in case of manifest abuse of discretion." Id. at 317. See also, Coleman v. State, 378 So.2d 640 (Miss. 1979).
We went on to modify the rule set forth above, to include an objective test that "a judge is required to disqualify himself if a reasonable person, knowing all the circumstances, would harbor doubts about his impartiality. Rutland at 954." Cantrell, 507 So.2d at 332 (Sullivan, J., concurring).
We find that in light of the fact that (1) Judge McKenzie's brother is a senior partner in the law firm representing Forrest County General Hospital, obviously a part of the medical community, coupled with (2) allegations and testimony that the medical community in Forrest County assisted in electing the judge, this would lead a reasonable person, with knowledge of the circumstances, to harbor doubts about Judge McKenzie's impartiality. We make the point that this test is an objective one, and under the facts presented below we have no choice but to reverse on this matter. The issue is not any wrongdoing on the part of Judge McKenzie, but the potential for such and moreover, how this situation appears to the general public and the litigants whose cause comes before this judge.
Every litigant is entitled to nothing less than the cold neutrality of an impartial judge, who must possess the disinterestedness of a total stranger to the interest of the parties involved in the litigation, whether that interest is revealed by *1182 an inspection of the record or developed by evidence aliunde the record.
Yazoo & M.V.R. Co. v. Kirk, 102 Miss. 41, 55, 58 So. 710, 713 (1912).
In accordance with the rules of law above discussed, and the facts of this case, we are of the opinion that a reasonable person, knowing all the circumstances, would harbor doubts as to Judge McKenzie's impartiality. Therefore, we find that the interest of justice would best have been served had Judge McKenzie recused himself from this matter. Cantrell, supra, (Sullivan, J., concurring). In light of his failure to do so, this necessitates reversal on all points with an order that a circuit judge, other than Judge McKenzie, preside over this matter.
The judgment of the lower court is reversed and this cause is remanded for a new trial with orders consistent with this opinion.
REVERSED AND REMANDED.
ROY NOBLE LEE, C.J., HAWKINS and DAN M. LEE, P.JJ., and PRATHER, ROBERTSON, and ZUCCARO, JJ., concur.
GRIFFIN and ANDERSON, JJ., dissent.
GRIFFIN, Justice, dissenting:
The complaint in this cause was filed on March 11, 1983. The motion for the judge to recuse himself was not filed until September 11, 1984, some eighteen months later. It was filed after all of the motions for summary judgment, except one, had been filed and a non-transcribed hearing held. Admittedly, the summary judgments were not entered until a transcribed hearing was conducted on the motions and at which hearing the motion to recuse was overruled.
Approximately one year prior to the hearing on a motion to recuse, Judge Richard McKenzie, having injured his hand in a fall, met William Wilson, a Pascagoula attorney, outside of the Oschner Clinic in New Orleans. Wilson described his relationship with Judge McKenzie as "very familiar" and "cordial", dating to their law school days.
Intended as a "teasing remark", Wilson stated, "It's a shame they cannot attend your hand in Hattiesburg as much as they did for you in the last election." Judge McKenzie, according to Wilson, responded, "They elected me." At the hearing, Wilson testified, "It was something that surprised me, it was a very frank statement to a teasing remark to which I expected a jocular answer, and I did not take that to be jocular."
The majority opinion concludes that it was error for Judge McKenzie to hear the case at issue, involving medical malpractice, stating,
[I]n light of the fact that (1) Judge McKenzie's brother is a senior partner in the law firm representing Forrest County General Hospital, obviously a part of the medical community, coupled with (2) allegations and testimony that the medical community in Forrest County assisted in electing the judge, this would lead a reasonable person, with knowledge of the circumstances, to harbor doubts about Judge McKenzie's impartiality.
In support, the majority opinion cites Rutland v. Pridgen, 493 So.2d 952 (1986), where this Court, adopting an objective test, stated, "A judge is required to disqualify himself if a reasonable person, knowing all the circumstances, would harbor doubts about his impartiality." Yet, Rutland was a significant departure from the standing rule, which was a subjective test. Black v. State, 187 So.2d 815, 819 (1966) ("[W]here there is a reasonable doubt in the mind of the trial judge. ...") (emphasis added).
Moreover, Rutland suggested that this Court would give Canon 3, Code of Judicial Conduct (A Judge Should Perform the Duties of his Office Impartially and Diligently) the force of law. Cf., Ruffin v. State, 481 So.2d 312, 317 (Miss. 1985). Canon 3 C(1) states, in part:
A judge should disqualify himself in a proceeding in which his impartiality *1183 might reasonably be questioned, including but not limited to instances where:
* * * * * *
(d) he or his spouse, or a person within the third degree of relationship to either of them, or the spouse of such a person:
(i) is a party to the proceeding, or an officer, director, or trustee of a party;
(ii) is acting as a lawyer in the proceeding.
Historically, the Court recognized only a constitutional disqualification. Garrett v. State, 187 Miss. 441, 454, 193 So. 452, 455 (1940) ("The Constitution specifies what constitutes disqualification, and a judge cannot be disqualified from presiding at a trial unless he is disqualified within such provisions."), Cashin v. Murphy, 138 Miss. 853, 867, 103 So. 787, 791 (1925) ("[S]ection 165 of our Constitution has been the pole star guiding our court ..."). Miss. Const. Art. 6, § 165 states, in part:
No judge of any court shall preside on the trial of any cause, where the parties or either of them, shall be connected with him by affinity or consanguinity, or where he may be interested in the same, except by consent of the judge and of the parties.
See also, Miss. Code Ann. § 9-1-11 (1972).
Where a judge is not so disqualified, the "propriety of his sitting or recusing himself is a question to be decided by him, and if subject to review at all, would be so only in case of a manifest abuse of discretion." McLendon v. State, 187 Miss. 247, 254, 191 So. 821, 823 (1939). See also, Ruffin, 481 So.2d at 317, Hitt v. State, 149 Miss. 718, 727, 115 So. 879, 881 (1928).
Interestingly, in the only case since Rutland, involving a judge's impartiality, the Court applied both tests, concluding, "Under either test we do not think the facts warrant a new trial." Cantrell v. State, 507 So.2d 325, 328 (Miss. 1987). Therefore, to adopt the opinion in this case, which recognizes only the objective test is to disinherit other cases, cited above, which recognize only the subjective test. Also, this opinion undoubtedly gives Canon 3 C(1) the force of law.
The majority opinion offers two grounds for reversal. First of all, it notes that Judge McKenzie's brother is a partner in the law firm of Heidelberg, Sutherland & McKenzie, which represented Forrest County General Hospital, a defendant in this suit. In support, the opinion cites the commentary to Canon 3 C(1)(d), which reads,
The fact that a lawyer in a proceeding is affiliated with a law firm with which a lawyer relative of the judge is affiliated does not of itself disqualify the judge. Under appropriate circumstances, the fact that "his impartiality might reasonably be questioned" under Canon 3 C(1), or that the lawyer-relative is known by the judge to have an interest in the law firm that could be "substantially affected by the outcome of the proceeding" under Canon 3 C(1)(d)(iii) may require his disqualification.
Yet, at the hearing, Mr. R.W. Heidelberg, another partner of Heidelberg, Sutherland & McKenzie, stated that his firm would receive a fee for its services, not contingent upon the outcome of the litigation. Judge McKenzie also stated that his brother had not participated in the case.
Significantly, the commentary, quoted above, specifically speaks to an interest "substantially affected by the outcome of the proceeding," which might require disqualification. Seemingly, this refers only to a contingency fee, not present here. See, Yazoo & M.V.R. Co. v. Kirk, 102 Miss. 41, 51-6, 58 So. 710, 711-13 (1912). Additionally, the present facts are not inconsistent with Art. 6, § 165 or § 9-1-11.
Also, a strict construction of Canon 3, if adopted, here prohibiting the firm of Heidelberg, Sutherland & McKenzie from any appearance, would work a particular hardship when later applied in those circuit court districts having only one judge (i.e., Districts 6, 8, 12, 13, 24 and 18). Previously, in Clark v. State, 409 So.2d 1325, 1330 (Miss. 1982), the Court recognized the problems associated with recuse in a single judge district.
*1184 The first ground listed for reversal is, to this writer, insufficient to accomplish the act.
The majority opinion also states that "allegations and testimony," concerning the medical community's role in the election, would lead a reasonable person to "harbor doubts about Judge McKenzie's impartiality." To this writer, reasonable men are made of sterner stuff.
In particular, there is absolutely nothing in the record to suggest that Judge McKenzie was predisposed to favor or disfavor a particular party in this suit. Rather, after a contested election in which many doctors supposedly supported him, Judge McKenzie, responding to a friend's "teasing remark" near an out-of-state medical facility, merely admitted the same.
Yet, such an admission, even if said in seriousness, does not implicate Judge McKenzie's fairness. Indeed, as long as we elect judges, certain groups will choose to support or oppose particular candidates. Certainly, their exercise of support or opposition does not, without more, indicate that a judge, in violation of his oath, will favor or disfavor members of those groups, brought before his court.
Unfortunately, the opinion's holding also implicates the motives of individuals or groups, who favor or oppose judicial candidates. Here, the doctors' alleged support of a judicial candidate may not only mean that they opposed the incumbent judge, on perhaps perfectly valid grounds, but also mean that they might receive special consideration by the court, such that a reasonable person would harbor doubt about the new judge's impartiality.
In fact, there is no evidence that Judge McKenzie made "pledges or promises of conduct in office other than the faithful and impartial performance of the duties of the office," or that he personally solicited or accepted campaign funds, all violations of Canon 7 B, Code of Judicial Conduct (Campaign Conduct).
To this writer, Judge McKenzie's decision to hear this case was not improper. Under the first test, there is nothing to indicate a manifest abuse of discretion, since the judge, presumably knowing his own heart, found, without evidentiary contradiction, that he was able to hear the case without bias.
Under the second test, there is nothing to indicate that a reasonable person would harbor doubts about Judge McKenzie's impartiality. Indeed, although Judge McKenzie acknowledged the medical community's support, surely a reasonable person would also consider other factors, including the oath of office, ethical canons, and Judge McKenzie's own ruling on the motion, especially since he was unable to testify in his own behalf.
In addition, even if we adopt the objective test, suggested in the opinion, our standard of review remains manifest abuse of discretion, and there was none.
Finally, in Gordon v. State, 149 So.2d 475, 477 (Miss. 1963), this Court stated, "The circuit judge must be held impartial and unprejudiced in the absence of an express showing that he is otherwise." Again, there is no such showing here.
We held in Garrett v. State, 187 Miss. 441, 454, 193 So. 452, 455 (1940) that absent prejudicial rulings, we would not reverse a judgment based solely upon a trial judge's refusal to recuse himself from the case. There is nothing in any of the judge's rulings on motions for summary judgment that indicates any prejudice.
His rulings are generally supported by the law applicable to summary judgments and medical malpractice; to illustrate, Judge McKenzie granted summary judgments to Dr. Hernando Velez of the Hattiesburg Radiology Group, who performed and interpreted two sonograms, Forrest County General Hospital, where Mrs. Jenkins received treatment, and Dr. Marcus Hogan, who performed the tubal ligation in February, 1977. Hogan also saw Mrs. Jenkins on April 3, 1981, when she arrived at the hospital's emergency room, complaining of pain. Only the summary judgment for Hogan merits discussion, since the others were obviously appropriate. The hospital being a governmental agency enjoys immunity.
*1185 Parenthetically, two defendants, Drs. A.D. Cromartie and Dorothy Gillespie remain in the case. It is apparent from the complaint that their conduct and theirs alone is that which gives rise to this cause of action.
In Judge McKenzie's Findings of Fact, he stated:
Based upon the Court's review of the discovery as obtained in this cause, and the Complaint filed on behalf of the Plaintiff, the Court is convinced that if the Plaintiff has a cause of action against Marcus Hogan, M.D., it would be based upon the February 23, 1977, hospitalization, and the February 24, 1977, tubal ligation. There are no other allegations of negligence concerning Dr. Hogan contained either in the Complaint, or in any discovery to which the Court has been directed by counsel for the Plaintiffs, but to the contrary, the discovery to which the Court has been directed by the Defendant, Dr. Hogan, seems to be clear and conclusive on this point.
As a result, Judge McKenzie found the Jenkins' action barred by Miss. Code Ann. § 15-1-36 (Supp. 1981) (Limitations applicable to medical or pharmaceutical malpractice), having been filed on March 11, 1983.
On appeal, the appellants cite § 15-1-36, which reads, in part:
No claim in tort may be brought against a licensed physician, osteopath, dentist, hospital, nurse, pharmacist or podiatrist for injuries arising out of the course of medical or surgical treatment unless it is filed within two (2) years from the date the alleged act, omission or neglect shall or with reasonable diligence might have been first known or discovered.
See also, Pittman v. Hodges, 462 So.2d 330, 333 (Miss. 1984), Tribou v. Gunn, 410 So.2d 378, 379 (Miss. 1982). They contend then that the statute of limitations did not begin to run until April 8, 1981, when an ultrasound examination showed that Mrs. Jenkins was carrying a child, not on February 24, 1977, when Dr. Hogan performed the tubal ligation.
Regardless of the statute of limitations, summary judgment for Hogan was proper. M.R.C.P. 56(e) states, in part:
When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleadings, but his response, by affidavits or otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him.
The appellants' response was an affidavit by Dr. Robert E. Pieroni, of Alabama, which stated that he was familiar with the standard of care for physicians in April, 1981, and that all of the defendants breached that standard of care. He gave no particulars. Based upon the affidavit, there is nothing to indicate that Pieroni reviewed Hogan's records for February, 1977.
The appellants also rely on the doctrine of res ipsa loquitur. In the past, the Court has held that "negligence on the part of a physician can only be established by expert medical testimony unless the matter is within the common knowledge of laymen... ." Trapp v. Cayson, 471 So.2d 375, 380 (Miss. 1985). See also, Latham v. Hayes, 495 So.2d 453, 459 (Miss. 1986), Hammond v. Grissom, 470 So.2d 1049, 1053 (Miss. 1985). This writer suggests that the efficiency of a tubal ligation is not within a layman's knowledge.
In short, there is only the appellants' allegation that Hogan's previous negligence allowed her subsequent pregnancy to occur. Other allegations, concerning Hogan's actions in April, 1981, were not properly before the court. Consequently, the appellants failed to show a genuine issue of material fact and certainly no prejudicial ruling.
I respectfully dissent.
ANDERSON, J., joins this opinion.

*1186 OPINION CONCURRING IN DENIAL OF REHEARING
HAWKINS, Presiding Justice, concurring.
I concur in the denial of the Petition for Rehearing.
I do think the petitioners make a cogent argument that under the authority of Landrum v. Bailey, 475 So.2d 140 (Miss. 1985), and Clark v. City of Pascagoula, 473 So.2d 477 (Miss. 1985), the appellants failed to timely perfect their appeal as required by Mississippi Supreme Court Rule 48 in effect at the time of trial.[1] Consistent with my dissent in Landrum v. Bailey, however, I would overrule Landrum v. Bailey insofar as it requires dismissing an appeal in which Rule 48 has not been followed to the letter. For an infraction of the nature of this case, as in Landrum v. Bailey, in which no harm whatever has been done the appellees, I would apply Rule 33 and relax the strict requirement of Rule 48 just a bit.
DAN M. LEE, P.J., and SULLIVAN, J., join this opinion.
NOTES
[1] Since the appeal was filed in 1985, the Supreme Court Rules applicable at that time were used rather than the rules effective as of January 1, 1988. The pertinent part of Supreme Court Rule 48 at that time stated:

(b) In all cases in which an appeal is permitted by law of right to the Supreme Court, the party or parties taking the appeal shall file a notice of appeal with the clerk of the court whose judgment, order or decree is being appealed within 30 days after the date of entry of the judgment, order or decree. A copy of the notice of appeal shall be served upon all other parties in the case and upon the said court reporter.