556 So.2d 723 (1990)
In re Catherine Ruth MOFFETT and Larry Moffett, Petitioners.
No. 89-M-853.
Supreme Court of Mississippi.
January 31, 1990.
Jeff D. Rawlings, Brad Sessums, Richard Underwood, Young Scanlon & Sessums, Jackson, for petitioners.
J. Robert Ramsay, Bryant Colingo Clark Dukes Blakeslee & Ramsay, R. Web Heidelberg, Heidelberg Sutherland & McKenzie, Hattiesburg, for respondents.
En Banc.

ON APPLICATION FOR WRIT OF MANDAMUS AND FOR OTHER EXTRAORDINARY RELIEF
ROY NOBLE LEE, C.J., for the Court.
This matter is before the Court upon application of Catherine Ruth Moffett and Larry Moffett, plaintiffs in a case pending *724 in the Circuit Court of Forrest County, Mississippi, Cause No. 11-88-2521, filed against Lewis Hatten, M.D., and Forrest General Hospital, alleging medical negligence and malpractice. Judge Richard W. McKenzie is the presiding Circuit Court Judge for Forrest County, Mississippi, where the case is pending.
On November 18, 1988, the complaint was filed by the petitioners here, and on December 28, 1988, Judge McKenzie filed a notice of relationship which reflected that Judge Richard W. McKenzie is a brother of, and related in the second degree to, James F. McKenzie, a member of the law firm of Heidelberg, Sutherland and McKenzie of Hattiesburg, which law firm is counsel of record for one or more parties in the action.
On January 13, 1989, the Moffetts filed a motion for recusal of Judge McKenzie. The motion stated that James F. McKenzie, brother of Judge Richard W. McKenzie, is a partner in the law firm of Heidelberg, Sutherland & McKenzie, and that the firm represents the defendant Forrest General Hospital in the Moffetts' pending case. The motion further states that Judge McKenzie should recuse himself to avoid the appearance of impropriety, pursuant to Canon 3(C)(1)(d) of the Code of Judicial Conduct and that, additionally, Article VI, § 165 of the Mississippi Constitution requires recusal absent consent of the parties and that petitioners have not consented to Judge McKenzie presiding in the case.
On June 23, 1989, after a hearing, Judge McKenzie denied the petitioners' motion for recusal and the matter is now before this Court for remedial relief pursuant to Miss. Sup.Ct. Rule 21.
Petitioners cite and rely upon Jenkins v. Forrest County General Hospital, 542 So.2d 1180 (Miss. 1989). Jenkins was a malpractice case against Forrest County General Hospital (same defendant in the Moffett case), Hattiesburg Radiology Group, a partnership composed of Dr. Marcus Hogan and Dr. Hernando Velez. Judge Richard W. McKenzie was the presiding judge and denied plaintiffs' motion for his recusal. Judge McKenzie proceeded to hear motions for summary judgment filed by the defendants. On appeal, this Court first addressed the assigned error of Judge McKenzie's refusal to recuse himself and reversed and remanded the case without considering any other question, ordering that a circuit judge, other than Judge McKenzie, preside over the matter.
Jenkins, supra, turned on a two-pronged motion to recuse: (1) that Forrest County General Hospital and the medical community actively participated in the election of Judge McKenzie and was responsible for his election in 1982, and (2) James F. McKenzie was a senior partner in the law firm of Heidelberg, Sutherland & McKenzie, which represented Forrest County General Hospital in that suit. However, after seven (7) years of serving on the circuit bench and having been subsequently elected, the signs of political help in 1982 have grown dim and, therefore, cause no real concern to this Court in the Moffett case.
However, we examine with concern the relationship between Judge McKenzie and James F. McKenzie, his brother and a senior partner in the defending law firm. In Jenkins, Article VI, § 165, Mississippi Constitution of 1890, Mississippi Code Annotated § 9-1-11 (1972), and Canon 3 C(1)(d) of the Mississippi Code of Judicial Conduct were discussed, along with appropriate Mississippi cases relating to the disqualification and recusal of trial judges. Provisions of the Constitution and the statute do not cover the situation presented to the Court here, since Judge McKenzie's brother is not a party to the case. Had his law firm represented a defendant on a contingency contract, he would have become a party which would have required the judge to recuse himself under the Constitution and the statute. As in Jenkins, we look to Canon 3 C(1)(d) which states:
(1) A judge should disqualify himself in a proceeding in which his impartiality might reasonably be questioned, including but not limited to instances where:
(d) he or his spouse, or a person within the third degree of relationship to either *725 of them, or the spouse of such a person:
(i) is a party to the proceeding, or an officer, director, or trustee of a party;
(ii) is acting as a lawyer in the proceeding.
The Commentary to this Canon reads as follows:
The fact that a lawyer in a proceeding is affiliated with a law firm with which a lawyer-relative of the judge is affiliated does not of itself disqualify the judge.
Under appropriate circumstances, the fact that "his impartiality might reasonably be questioned" under Canon 3 C(1), or that the lawyer-relative is known by the judge to have an interest in the law firm that could be "substantially affected by the outcome of the proceeding" under Canon 3 C(1)(d)(iii) may require his disqualification.
The respondents claim that James F. McKenzie is not a trial lawyer and his practice is limited to office practice; that he does not appear before Judge Richard W. McKenzie and that his firm is paid for their services on an hourly basis, without any contingent arrangement. Mr. McKenzie testified that his financial interest lies in the fact that he shares in the profits of the law firm. However, Mr. McKenzie pointed out that their law firm serves as general counsel to Forrest County General Hospital and, as such, he is involved in the business affairs of the hospital. He conceded that the hospital is a happy client when the firm wins lawsuits in which the hospital is involved. In Jenkins v. Forrest County General Hospital, 542 So.2d 1180 (Miss. 1989), quoting from Rutland v. Pridgen, 493 So.2d 952 (Miss. 1986), this Court said:
In Rutland v. Pridgen, 493 So.2d 952, 954 (Miss. 1986), we stated:
In Ruffin v. State, 481 So.2d 312 (Miss. 1984 [sic], we said, "When a judge is not disqualified under § 165 of the Mississippi Constitution, or § 9-1-11, the propriety of his or her sitting is a question to review only in case of manifest abuse of discretion."

Id. at 317. See also, Coleman v. State, 378 So.2d 640 (Miss. 1979).
We went on to modify the rule set forth above, to include an objective test that "a judge is required to disqualify himself if a reasonable person, knowing all the circumstances, would harbor doubts about his impartiality." Rutland at 954. Cantrell [v. State], 507 So.2d [325] at 332 [Miss. 1987] (Sullivan, J., concurring).
We find that in light of the fact that (1) Judge McKenzie's brother is a senior partner in the law firm representing Forrest County General Hospital, obviously a part of the medical community, coupled with (2) allegations and testimony that the medical community in Forrest County assisted in electing the judge, this would lead a reasonable person, with knowledge of the circumstances, to harbor doubts about Judge McKenzie's impartiality. We make the point that this test is an objective one, and under the facts presented below we have no choice but to reverse on this matter. The issue is not any wrongdoing on the part of Judge McKenzie, but the potential for such and moreover, how this situation appears to the general public and the litigants whose cause comes before this judge.
542 So.2d at 1181.
The question here is not whether Judge McKenzie would give favor or disfavor in the trial of the Moffetts' case, but whether or not there is a reasonable appearance of impropriety on the part of the judge because his brother is a senior partner in the law firm representing a principal defendant. The Moffetts, who have a case of great importance to them, are reasonably concerned that kinship might cause them to be at a disadvantage in the presentation of their claim. Their friends, relatives, and probably other persons, who think of the closeness between brothers, could reasonably think that it was improper for the judge to preside over the case under those circumstances. If the Moffetts should lose their case, particularly on summary judgment, directed verdict, JNOV, or instructions, the public which knows nothing of the parties, the lawyers or the judge, *726 probably would say "Why, no wonder, the judge's brother was one of the lawyers." The appearance of impropriety!
The question which we must decide is distasteful to appellate courts. To solve the problem, trial judges, in a situation such as is presented here, particularly where the judge has filed a notice of relationship and then a motion has been made for recusal because of such close kinship, should grant the motion and decline to participate in the case. As, in Jenkins v. Forrest County General Hospital, we find that the interest of justice would best have been served had Judge McKenzie recused himself from this matter.
The relief prayed for is granted, and this cause is remanded to the Circuit Court of Forrest County, Mississippi, for trial before a circuit judge other than Circuit Judge Richard W. McKenzie.
EXTRAORDINARY RELIEF OF RECUSAL GRANTED AND CAUSE REMANDED TO THE CIRCUIT COURT OF FORREST COUNTY, MISSISSIPPI
ROY NOBLE LEE, C.J., DAN M. LEE, P.J., AND PRATHER, ROBERTSON, and BLASS, JJ., concur.
HAWKINS, P.J., dissents by Separate Written opinion joined by SULLIVAN, J.
SULLIVAN, J., dissents as to reliance on Jenkins v. Forrest County General Hospital, 542 So.2d 1180 (Miss. 1989), and files separate written opinion joined by HAWKINS, P.J., and ANDERSON and PITTMAN, JJ.

ON APPLICATION FOR WRIT OF MANDAMUS OR FOR OTHER EXTRAORDINARY RELIEF
HAWKINS, Presiding Justice, dissenting.
I respectfully dissent.
Without pausing to ask itself from whence we got such authority, the majority grants an interlocutory appeal and orders a circuit judge not to preside over a case pending in his court.
The majority does not enlighten us whether we are issuing a writ of mandamus compelling a circuit judge to perform some act, or a writ of prohibition against his performing what otherwise would be his duty. (Judge McKenzie is the only circuit judge in his district.) I assume it is the latter.
Until State v. Maples, 402 So.2d 350 (Miss. 1981), infra, this Court consistently held that while it could in limited circumstances issue a writ of mandamus to an inferior court, we lacked jurisdiction to issue a writ of prohibition. Downing v. Davis, 34 F. Supp. 872 (D.C.Miss. 1940); Wynne v. Illinois C.R. Co., 108 Miss. 376, 66 So. 410 (1914); Holmes v. Forrest County, 199 Miss. 363, 24 So.2d 867 (1946); Owens v. Reese, 203 Miss. 322, 33 So.2d 834 (1948); Planters Insurance Co. v. Cramer, 47 Miss. 200 (1872). In State v. Maples, supra, where for the first time we issued such a writ in a rigidly narrow situation, we specifically excluded the very circumstance under which the majority grants this writ. See, Miss. Code Ann. §§ 11-41-1; 11-41-21.

MANDAMUS
Boydstun v. Perry, 249 So.2d 661 (Miss. 1971), the petitioner appealed from a refusal of a circuit judge to issue a writ of mandamus directing a circuit judge in another district to try two civil cases. We held the circuit judge had correctly ruled he had no jurisdiction to issue the writ. We then held by dictum that "original jurisdiction of the proceedings must necessarily rest with this Court, although factual questions might be heard by a specially designated trial judge appointed by this Court to hear the facts."
In Woods v. Lee, 390 So.2d 1010 (Miss. 1980), we held that the remedy available to a litigant when a trial judge failed to act on a motion for a new trial, or would not decide a case taken under advisement was to petition this Court for a writ of mandamus.
Both these cases recognized the narrow function of mandamus, to compel the judge *727 of an inferior court to perform a non-discretionary act he was required by law to perform. Significantly, in neither case were we called upon to actually issue a writ of mandamus.
As to mandamus, even in cases where there has been no question of the authority of a court to issue the writ in proper cases, we have consistently held that it would not lie to compel an inferior tribunal to act in a certain way in reference to a discretionary matter. Illinois Central R.R. Co. v. Moore, 215 So.2d 419 (Miss. 1968); Powell v. State Tax Commission, 233 Miss. 185, 101 So.2d 350 (1958); City of Clarksdale v. Harris, 188 Miss. 806, 196 So. 647 (Miss. 1940); Thomas v. Price, 171 Miss. 450, 158 So. 206 (Miss. 1934); Board of Supervisors of Rankin County v. Lee, 147 Miss. 99, 113 So. 194 (Miss. 1927).

PROHIBITION
In State v. Maples, supra, this Court was petitioned to issue a writ of prohibition against a circuit judge who had refused to recuse himself from hearing a number of criminal cases involving public officials in Jackson County. Bootstrapping ourselves from the holdings in Boydstun v. Perry and Woods v. Lee, supra, and solely because the State would have no adequate remedy upon appeal (if the circuit judge had rendered a directed verdict for the defendants, they could not be tried again), we directed the writ to issue. This was the first time this Court ever issued such a writ.
We then solemnly announced, however: The rule announced in this case will not apply to plaintiffs or defendants in civil cases, or defendants in criminal cases, where the judge is requested to recuse himself, because such parties may have the ruling of the trial judge reviewed on appeal.
402 So.2d at 353.
Then, in State v. Caldwell, 492 So.2d 575 (Miss. 1986), this Court jumped the track, in my judgment. The circuit judge overruled petitioner's motion for a change of venue, holding he had waived this motion by not having made it during his first trial. Petitioner applied to this Court for an order directing the circuit judge to change the venue of the trial. Over the protest of the State that we had no business hearing this matter, and citing our "inherent authority" to grant interlocutory appeals and remedial writs Newell v. State, 308 So.2d 71 (Miss. 1975), (we did not say just what kind of writ we were issuing), we ordered the circuit judge to change the venue of the trial. Other than Newell this Court did not cite from whence it had the "inherent authority" to compel a circuit judge at the beginning of a trial to change the venue.
This Court has no Constitutional, and no "inherent authority" to act as some umpire of a trial in progress.
Until 1983 Article 6, § 146 of our Constitution read, "The Supreme Court shall have such jurisdiction as properly belongs to a court of appeals." In November, 1983, the people amended it by addendum:
Section 146. The Supreme Court shall have such jurisdiction as properly belongs to a court of appeals and shall exercise no jurisdiction on matters other than those specifically provided by this Constitution or by general law. [Emphasis added]
This Court has not been bashful in making pontifical, reverential statements as to the plenary interpretation to be placed upon our Constitution's words in decisions not involving this Court. But when we have been involved, it has been an entirely different matter. Is language in that document limiting this Court's authority entitled to no more deference than graffiti?
This Court since 1983 has assumed unto itself, under the amorphous crown of "inherent authority," far more authority than it ever thought it had prior to the 1983 amendment. Is the 1983 amendment to § 146 meaningless? Or did it expand our authority?
In Caldwell, supra, it may very well have straightened out some kink in the judicial process for this Court to act when it did rather than await the circuit judge's refusal to be assigned as error on an appeal. It would have been far more in keeping with *728 respect for delegation of lawful authority, however, had we dismissed the petition and awaited, either by Constitutional amendment or statutory enactment, for such power to be granted to us.
Now we take the matter a step further. We tell a circuit judge before a trial he must recuse himself.
Now is not the time to express my own disapprobation at this circuit judge for the grave disservice he is, in my view, rendering the bench and bar. This Court likewise has an obligation, above all others, to recognize the Constitutional limits of our authority, and beyond that limits upon our exercise of the authority we do have. Because we are holding precisely what we declared we would never hold in State v. Maples, supra, the majority at least should say we are overruling that decision.[1] Fear, resentment and distrust are the inevitable harvest when a Supreme Court, over all other institutions, does not respect the limits of its authority.
It seems to have become our battle cry that nothing shall stand in the way of this Court doing justice.
And it does have a nice ring.
The only trouble is that a lynch mob could adopt the same slogan.
SULLIVAN, J., joins this opinion.
SULLIVAN, Justice, dissenting.
As to the reliance of the petitioners on the case of Jenkins v. Forrest County General Hospital, 542 So.2d 1180 (Miss. 1989), I respectfully dissent.
As the majority correctly points out, Jenkins is based upon a two-pronged foundation and as the majority states the political activity found valid in Jenkins is after the passage of time a dim cause of concern in this case. This is particularly true when it is understood that Judge McKenzie has been re-elected to the bench without opposition.
The Jenkins case rested on its very peculiar facts and those facts are not present here. In Jenkins the procedural posture of the case when it arrived at this Court was that Judge McKenzie had in fact already granted summary judgment unfavorable to the plaintiffs, and thus opened the door for the very strong appearance of impropriety without the leavening intervention of the jury. Such is not the case here.
With respect I therefore dissent.
HAWKINS, P.J., and ANDERSON and PITTMAN, JJ., join in this dissent.
NOTES
[1] Just as obvious we are also overruling Jenkins v. Forrest County General Hospital, 542 So.2d 1180 (Miss. 1989). In that case, as clearly as it could be expressed in the English language, we stated that it was Judge McKenzie's close ties with the medical profession coupled with his brother being a member of the law firm of one of the defendants which justified his recusal. The first of these ingredients is missing from this case.

It should also be pointed out that Jenkins v. Forrest County General Hospital, supra, was not before us upon some interlocutory appeal, but an appeal from a final judgment.