665 So.2d 1341 (1995)
Bowman Stirling TIGHE, Jr., Executor of the Estate of Bowman Stirling Tighe, Sr., Deceased
v.
James L. CROSTHWAIT, M.D., and Jackson Heart Clinic, P.A.
No. 91-CA-00882-SCT.
Supreme Court of Mississippi.
October 12, 1995.
*1342 William Liston, Liston & Lancaster, Winona, MS; Dennis C. Sweet, III, Langston Frazer & Sweet, Jackson, MS; John W. Chapman, Chapman & Younger, Brandon, MS; for appellant.
Senith C. Tipton, McCoy Wilkins Stephens & Tipton, Jackson, MS; Joseph L. McCoy, McCoy Wilkins Firm, Jackson, MS; for appellee.

*1343 ORDER

DAN M. LEE, Presiding Justice.
This day came on to be heard the Motion of James L. Crosthwait, M.D., and Jackson Heart Clinic, P.A., Appellees, to order the recusal of a Justice of this Court, filed on March 21, 1995. After due consideration, the same is hereby denied.
SO ORDERED.
HAWKINS, Chief Justice, on recusal order:
My views as to the propriety of Justice McRae's recusal in this case coincide with Justice Smith's and his well stated reasons therefor. I would also hold that this Court has the authority to require a member of this Court to recuse himself from participation in a case precisely as it has the authority to require a trial judge to do so, and this Court should sustain the motion for Justice McRae to be recused.
At the June 1, 1995, conference of the Court, the matter of the motion for Justice McRae's recusal was again discussed, and there was a consensus of a majority of the Justices that it was Justice McRae's prerogative to rule on the motion, himself, with the remaining members having no authority to make any authoritative ruling on the motion. The remaining members did, however, reserve unto themselves the prerogative of expressing their views as to Justice McRae's ruling on this motion.
Justice McRae chose to deny the motion at our En Banc conference on June 1, 1995. Later, however, he has prepared an order in which he recuses himself. Ordinarily, this should end the matter.
There are compelling reasons, however, for this Court to rule. For, as Justice Smith states, there are other cases involving the same question of Justice McRae's participation in which attorney Bill Liston is counsel for one of the parties, and whether Justice McRae intends to recuse himself in those cases is unanswered. I am not at all certain what Justice McRae proposes to do in reference to the other cases in which this same question is presented.
Moreover, the motion for Justice McRae's recusal was addressed to the Court, not to him individually. It is for this Court to answer. Other Justices have expressed their views. Mine follows:
The first question is whether this Court has the authority to remove Justice McRae from considering this case over his objection. The second is whether there is sufficient reason to justify his recusal. Both should be answered affirmatively.
This Court, acting in a body, has the authority by majority vote to rule on the motion to recuse Justice McRae, and in this respect I disagree with my colleagues, who while being of the opinion Justice McRae should recuse himself are also of the view that the Court lacks authority to direct him to do so.[1] Understandably, and fortunately, there is a paucity of authority addressing this delicate matter, but a few fundamental principles make a discernible path.

AUTHORITY OF COURT
This Court has the Constitutional authority to require trial court judges to recuse themselves in cases where a fair and impartial trial dictates such removal. Aetna, et al. v. Berry, 669 So.2d 56 (Miss. 1995); Jenkins v. Forrest County General Hospital, 542 So.2d 1180 (Miss. 1988). There is no reason why this Court, acting through a majority of its members, cannot require an individual Justice to remove himself. No individual Justice has authority to speak for the Court. He has authority to voice and circulate his views and a single vote when the Court speaks, and *1344 that is it. The Court can only act in concert, and speak in a body. Each individual Justice is co-equal with every other member, but each and every member is subordinate to the will of the Court expressed through a vote of the majority. A member of this Court as an individual is just as subordinate to the will of the majority acting in concert as a trial court judge. An individual Justice is not the Court. A simple majority vote by a quorum of this Court is the Court speaking. Miss. Const., Art 6, § 145B.
Each member of this Court holds a Constitutional office, and has been duly elected by the people of his District. He or she is entitled to all the emoluments of the office of Supreme Court Justice. But no member of this Court can have the right to sit in judgment on a case in which his personal disqualifications if applied to a trial court judge would justify the latter's removal. "There can be no vestiture of judicial power in judges who are partial." State ex rel. Hannah v. Armijo, 38 N.M. 73, 28 P.2d 511, 512 (N.M., 1933). Moreover, no litigant has any Constitutional right to have any particular Justice sit on his case. Two-thirds of the electorate in Mississippi had no voice in the election of each member of this Court. It is repugnant to any view of an orderly and fair administration of justice that the Court, speaking through a majority vote of its members, is unable to inform a single member he cannot sit in a particular case. This view denies the Court the power, expressed through a majority of its members, to preserve the honor and sanctity of the Court even in circumstances of paramount public importance. This Court, as other appellate courts throughout the United States, has internal rules which authorize disqualification of a member of the court from participating in a case for reasons such as delay in voting or writing an opinion or a dissent. Clearly then, when a member of this Court would be disqualified if the same facts were applied to a trial judge, the Court can direct his recusal.
"Deliberative bodies, in order that the will of a majority of their members may be ascertained and registered in an orderly way, must, ex necessitate rei, be governed by rules of procedure to which each member thereof must conform." 67A C.J.S. Parliamentary Law, § 4. Every lawful body must have the authority to preserve and protect its own integrity. No public body can be put at the mercy or whim of one of its members and survive, most especially the court of last resort in the State.
In short, the Court has this authority because as an institution it must have it to exist.
If a Supreme Court lacked such authority, it would be denigrated to the whim or caprice of a mentally unbalanced or, God forbid, corrupt member.[2]

MERITS OF MOTION
As to the merits of the motion for Justice McRae to be recused, it should be granted. I see no reason why the Mississippi Supreme Court should be held to any lower standard of ethics than the United States Supreme Court. I have the highest respect and personal regard for the attorney for the plaintiff in this case, and with good reason, having known him for over three decades. Had a member of the United States Supreme Court been involved in personal conduct reflecting upon his fitness to serve on that Court, and a respected member of the Bar volunteered his services to personally assist the Justice, it is unthinkable to me that the attorney would not also recognize that beginning with the acceptance by the Justice of the offer of his services he had also removed the Justice *1345 from sitting in judgment on any of his cases then pending before the Court.
We have historically held that any motion for a judge to recuse himself should first be passed upon by that judge. This is as it should be, because the judge, who has firsthand knowledge of the factual basis of the motion, should have an opportunity first to determine whether or not he agrees with the motion. In the overwhelming majority of cases, the judge will promptly recognize any motion in which there is merit, and voluntarily recuse himself.
There are two general types of situations in which judges are called upon to recuse themselves. First are those cases in which no judge wants to sit, anyway, and judges often recuse themselves without any motion to do so. For example, two attorneys in the judge's district suing each other, a divorce action in which an attorney in the district is a party, or a case of wide and unpleasant notoriety and there is some attachment by one or both the parties to the judge.
Then, there is the situation in which there is a serious question whether a judge has any business sitting, but for some reason finds himself wanting to remain. For example, it is an important case to a very close personal friend or someone with whom the judge has close financial ties, or it is a case with some legal questions which may be useful in another case in which the judge, his family or very close personal friends do have a substantial financial interest. Then, the well-springs of the judge's sense of ethics come into play. It is neither unnatural nor morally wrong to have self-interest or an inclination to help one's own family or close friend. If a judge is honest with himself, that natural inclination is pitted against the judge's own concept of his solemn duty as a judge to be absolutely impartial and coldly neutral in deciding the case, and he must address a question to himself. Will this personal situation interfere with my ability to be completely evenhanded and impartial to each side? It can be an exceedingly difficult question. To the truly conscientious judge, the fact that he sees occasion to seriously ask himself the question is sufficient ground to disqualify himself, because a partial judge is no judge, but an advocate instead, and a menace to justice.
Because it is such a serious matter involving the judge's own personal feeling and perhaps with some emotional involvement, quite frequently the judge might wish to have a disinterested judge advise him.
Moreover, even if the judge can satisfy his own conscience that there is nothing improper with his sitting, there remains the question which he may not be the one to answer, namely: how will my remaining as judge in this case be perceived by a public informed of the factual basis of the impediments to my sitting as judge? While a judge may be personally satisfied with his ability to be impartial and not be inclined to recuse himself, if there is any serious question that the public will perceive his continuing to sit under the circumstances improper, then clearly a disinterested judge should be consulted. Jenkins v. Forrest County General Hospital, supra.
Finally there must be some balance, considerable discretion in a judge's decision to either remove himself or remain as judge in the case. It should neither be a simple matter to require a judge to recuse himself nor a burden impossible to hurdle. And, any disinterested judge confronted with the question whether one of his colleagues should recuse himself would do well to follow the conservative dictum: if it is not necessary for the judge to withdraw from the case, it is necessary that he not withdraw. Unquestionably, at times it will be difficult to answer, and a judge qualified to sit has an obligation to remain just as much as the disqualified judge's obligation to recuse himself. Yet when all is said and done, if there is a serious ethical question implicating the fairness and integrity of the court, there should be no hesitancy in recommending recusal.
In Jenkins, 542 So.2d at 1181, Justice Sullivan, speaking for this Court, held that if the facts supporting a motion for a judge to recuse himself was based upon facts "that would lead a reasonable person to harbor doubts" about the judge's "impartiality," then the judge was obligated to recuse himself. As to this test, we further held: "We make *1346 the point that this test is an objective one, and under the facts presented there, we have no choice but to reverse the matter." It is how the "situation appears to the general public and to the litigants whose cause comes before the judge." Here it is inevitable to me that an informed public and the litigants will justifiably harbor doubts about Justice McRae's impartiality.
In this case this Court has the authority to do so, and this Court should grant the motion that Justice McRae be recused.
PRATHER, P.J., joins in this statement.
PRATHER, Presiding Justice, on the recusal order:
This case presents the following legal questions: (1) whether Justice McRae should recuse himself, and (2) whether the justices of this Court have the authority to require a fellow justice to recuse himself?

I.
Regarding the first issue, Justice McRae's participation would arguably violate at least two Canons of the Code of Judicial Conduct. The Code of Judicial Conduct was adopted by the Mississippi Conference of Judges on October 25, 1974, and adopted as amended by the Supreme Court of Mississippi on February 15, 1995, making it applicable to all judges, including Justices of the Supreme Court of Mississippi. Canon Two of the Code reads:
A. A judge should respect and comply with the law and should conduct himself at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary.
B. A judge should not allow his family, social or other relationships to influence his judicial conduct or judgment. He should not lend the prestige of his office to advance the private interests of others; nor should he convey or permit others to convey the impression that they are in a special position to influence him. He should not testify voluntarily as a character witness.
Commentary
Public confidence in the judiciary is eroded by irresponsible or improper conduct by judges. A judge must void all impropriety and appearance of impropriety. He must expect to be the subject of constant public scrutiny. He must therefore accept restrictions of his conduct that might be viewed as burdensome by the ordinary citizen and should do so freely and willingly.
Canon Two, Code of Judicial Conduct.
Justice McRae's participation in this case would arguably violate Canon Three, Section C, of the Code of Judicial Conduct, which reads:
C. Disqualification
(1) A judge should disqualify himself in a proceeding in which his impartiality might reasonably be questioned, including but not limited to instances where:
(a) he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding;
Canon Three, Section C, Code of Judicial Conduct.
Justice Smith's analysis of the facts amply demonstrates how Justice McRae's participation would violate these canons.
In addition to the Code of Judicial Conduct, public policy dictates that Justice McRae's recusal is necessary in this case. When a judge's impartiality is validly in question because he has a substantial personal interest in the outcome, the judge should disqualified on public policy grounds. See State ex rel Richardson v. Keen, 185 Okl. 539, 95 P.2d 120, 121 (Okla. 1939). For these reasons, I agree that Justice McRae's recusal was in compliance with the Code of Judicial Conduct as well as the mandates of public policy.

II.
As to the issue of the authority of this Court to force a fellow justice to recuse, I concur with Justice Hawkins' analysis. This Court has inherent power, which was granted by the Mississippi Constitution "for the fair administration of justice." Newell v. *1347 State, 308 So.2d 71, 77 (Miss. 1975); see also Leahey v. Farrell, 362 Pa. 52, 66 A.2d 577, 578 (Pa. 1949). Undisputedly, the Mississippi Constitution, Art. 6, Section 144, gives this Court all judicial power of the state. Matthews v. State, 288 So.2d 714, 715 (Miss. 1974). The Court may invoke this inherent authority through the adjudication of cases, the promulgation of rules, or the development of internal management practices. Id. (with regard to internal management procedures); Newell, 308 So.2d at 77 (with regard to rule-making); Miss. Const. art 6, § 144. See also Marion P. Opala, Ten Canons of the Inherent-Power Doctrine: The Evolution of the Judiciary's Trichotomous Function, (© 1980, 1986).
This Court has the power to establish internal procedures for the administration of recusal motions, including the forced recusal of a fellow justice, where required. Moreover, the judgments of this Court are subject to reversal where federal due process rights are violated. Aetna Life Ins. Co. v. Lavoie, 475 U.S. 813, 822, 106 S.Ct. 1580-81, 89 L.Ed.2d 823, 833 (1986). Because the judgments of this Court could be reversed when a justice improperly fails to recuse himself, the implementation of an internal rule regarding recusals is absolutely necessary.
Since Justice McRae has properly recused himself, the issue is moot for this case. However, this Court should adopt an internal rule to govern all the justices of this Court who encounter this situation in the future.
I concur with the statements expressed by Chief Justice Hawkins. This Court should promulgate an internal rule regarding questions of recusal.
HAWKINS, C.J., joins this statement.
BANKS, Justice, statement on recusal order.
Because it is my view, in keeping with the authorities cited by Justice Smith, that the question of whether a justice must recuse from a particular case is addressed to that justice and that the propriety of any failure to recuse is to be tested by proceedings before the Judicial Performance Commission, I decline to comment upon the order entered in this matter and to comment upon such other pronouncements and observations as are made by other justices on the issue. I also take exception to the inclusion of matters not of record in this case nor fairly subject to judicial notice.
SULLIVAN, J., joins this statement.
SMITH, Justice, statement on the question of the recusal of Justice C.R. "Chuck" McRae:
The question at issue was presented through a Motion for this Court to require Recusal of Justice C.R. McRae filed by Dr. Crosthwait, primarily due to an article appearing on January 21, 1995, in the Clarion Ledger, Section 1A at page 13A, by staff writer Jerry Mitchell quoting Justice McRae as refusing to be interviewed by the newspaper and referring all questions to Winona lawyer Bill Liston.[1] Liston is counsel for Tighe. Dr. Crosthwait's motion raises the question of an appearance of impartiality or impropriety by Justice McRae under Canon 3, Code of Judicial Conduct.
Justice McRae, in response to questions by the En Banc, advised that Bill Liston had never been his attorney and never given him advice. However, Justice McRae did confirm that in refusing a personal interview with the Clarion Ledger, he told Jerry Mitchell, the newspaper reporter, to speak directly with Bill Liston concerning the subject matter.
Liston filed with this Court a response to Dr. Crosthwait's recusal motion, stating that there was no attorney-client relationship between himself and Justice McRae. Liston stated that he was a member of a group of attorneys who advised Justice McRae that they stood ready to refute any inaccurate news stories published about Justice McRae. Liston's response stated that this procedure followed a precedent established by the Mississippi *1348 Chapter of the Federal Bar during a previous similar incident involving other parties and attorneys. Liston stated that his lawyer group's offer of assistance was approved by Justice McRae.
Justice McRae announced to the En Banc that he would not recuse in this case and circulated a vague order to that effect. Justice McRae has circulated six orders, four of which are totally different, concerning his decision in this case. In one of the previously circulated orders he announced that although he would not participate, his recusal had nothing to do with the reasons cited in Dr. Crosthwait's request of the Court to require his recusal. The current and hopefully final order simply states that he recuses himself. And yet, Justice McRae absolutely fails to give any reason for his recusal.
Justice McRae's inability to make up his mind about recusal is most bothersome indeed. This Court has been subjected to four different orders in the six that have been circulated from Justice McRae during a time span of several months. On the one hand, he has stated that he would not recuse himself, and yet thereafter, stated that he will recuse, but not for the reasons cited by Dr. Crosthwait in the request that this Court order Justice McRae's recusal. He has claimed the issue is moot since he has finally decided not to participate. Now, he states that he simply recuses himself. He has refused to place within his order the central question at issue concerning a policy decision of this Court, thus contributing to a decision by Presiding Justice Dan Lee to sign a separate order. Justice Lee is not even participating on the merits of the case. However, Justice Lee's order contains insufficient information regarding the central question at issue of whether a majority of this Court can compel another member to not participate in a case, nor does it explain the issue or the En Banc vote.
The question that Dr. Crosthwait placed squarely before the Court was whether a majority of the Court could order that another justice not participate in a case due to a conflict of interest. The issue is not moot because the En Banc considered and voted on this policy issue, determining that a majority of the Court could not prevent another justice from participating in a case and that each justice could write his or her view in response to Justice McRae's order. We now have two orders handed down. The issue is obviously recognized by some members of the Court as not being moot because Presiding Justice Lee has participated on this policy issue and signed one of the two orders, yet is not participating in the case on the merits. And, the orders keep changing. Tomorrow, we may be confronted with a totally different order. There is no end in sight.
Concerning the policy question of whether a majority of this Court can require another member of this Court to recuse, the En Banc majority voted 8-1 that Justice McRae must decide the issue of recusal himself and subsequent thereto, any member of the Court could write separately expressing their respective position on the issue of recusal.
This Court's nine members serve at the pleasure of the people by election to a constitutional office. While this Court clearly has statutory authority to enter judgments on inferior court judges and although we certainly have inherent authority to implement rules governing ourselves, we currently have no internal rules or Rules of Appellate Procedure allowing a majority of this Court to compel an individual justice on this Court to recuse himself when requested by motion of the parties. The Court apparently has never been confronted with a situation of the similarity or magnitude now before us. Under our constitution each justice is co-equal with all others. Our constitutional scheme is one justice  one vote.
The primary issue before us is one of first impression for this Court. A review of how our sister states have addressed the question is helpful. In Cohen v. Manchin, 175 W. Va. 525, 529, 336 S.E.2d 171, 175 (W. Va. 1984), the Supreme Court of Appeals held:
"We have established law holding that where a motion is made to disqualify or recuse an individual justice of this Court, that question is to be decided by the challenged justice and not by the *1349 other members of this Court." Id. at 529, 336 S.E.2d at 175, citing State ex rel. Matko v. Ziegler, 154 W. Va. 872, 873-74, 179 S.E.2d 735, 737 (1971), overruled on other grounds, Smoot v. Dingess, 160 W. Va. 558 236 S.E.2d 468 (1977). See also, Laird v. Tatum, 409 U.S. 824, 93 S.Ct. 7, 34 L.Ed.2d 50 (1972) (Rehnquist, J., memorandum on motion to recuse); Jewell Ridge Coal Corp. v. Local No. 6167, United Mine Workers of America, 325 U.S. 897, 65 S.Ct. 1550, 89 L.Ed. 2007 (1945) (Jackson, J., concurring opinion on denial of petition for rehearing); In re Estate of Carlton, 378 So.2d 1212 (Fla. 1979), cert. denied sub nom., Hayes v. Rogers, 447 U.S. 922, 100 S.Ct. 3013, 65 L.Ed.2d 1114 (1980); Giuliano v. Wainwright, 416 So.2d 1180 (Fla. Dist. Ct. App. 1982); Frank, Disqualification of Judges  Canon 3C, 1972 Utah L.Rev. 377; Frank, Disqualification of Judges, 56 Yale L.J. 605 (1947). (emphasis added).
Absent legislation or rules, Justice McRae alone must determine whether to recuse himself in the case sub judice. It goes without saying that each justice must decide for himself what proper course of personal action and standards of conduct to which he or she will adhere.
Nevertheless, all justices are bound by the Code of Judicial Conduct which dictates inter alia a higher standard of conduct than that required of attorneys, much less the average citizen. The Code further mandates that a judge "should disqualify himself from a proceeding in which his impartially might reasonably be questioned." Canon 3C(1) At this point, only Dr. Crosthwait raises concerns about the possible appearance of the impartiality of Justice McRae. Yet, once the facts surrounding this issue are made public the more important question arises: How will the public perceive Justice McRae's actions? The character and integrity of Bill Liston is above reproach and not at issue here. What is at issue is how an informed public might perceive Justice McRae's actions in this case. Thus, the central question involves a simple, common sense test requiring a justice to "disqualify himself if a reasonable person, knowing all the circumstances, would harbor doubts about his impartiality." Rutland v. Pridgen, 493 So.2d 952, 954 (Miss. 1986). In Jenkins v. Forrest County General Hospital, 542 So.2d 1180 (Miss. 1988) (Sullivan, J.), this Court stated:
Every litigant is entitled to nothing less than the cold neutrality of an impartial judge, who must possess the disinterestedness of a total stranger to the interest of the parties involved in the litigation, whether that interest is revealed by an inspection of the record or developed by evidence aliunde the record.
Jenkins, at 1181-82.
See also, Berry v. Aetna, Et al. No. 91-CA-00107-SCT, (Sullivan, J.), decided May 11, 1995. I cannot avoid the conclusion that the public, knowing all the circumstances of this case will view Justice McRae's relationship with Liston at this time as such that "cold neutrality" or "disinterestedness of a total stranger" is dubious indeed. The task facing Justice McRae is not difficult. Simply put, he should recuse himself and state in the order that the reason for his recusal is to avoid any appearance of impropriety.
The remaining justices of this Court cannot be our brother's keeper, yet it goes without saying that we should at all times conduct ourselves in a manner that promotes public confidence in the integrity and impartiality of the judiciary. Most certainly we should not allow a situation to develop where the public perceives that this Court allows and consents to an appearance of impropriety.
In recent months the integrity of this Court has suffered under relentless attacks primarily from the media's coverage of Justice McRae. The other justices have refrained from comment under our concept of ethical responsibility to this Court. Now, however, the issue squarely confronts us. The other members of this Court must protect the honor and integrity of the Court. This Court can no longer remain silent. We can now however, confronted with this issue, voice our concerns and thereby possibly restore a small glimmer of public faith in the impartial integrity of this honorable Court.
*1350 This Court, absent legislation, governing internal rule, or a Rule of Appellate Procedure, absolutely lacks authority to either recuse any individual justice from a case or remove that justice because of conduct or actions to which we individually or collectively by majority may disagree. While I agree with much of Chief Justice Hawkins' dissent and recognize that this Court has inherent rule making capacity to govern itself and its members, the fact remains, at this time, this Court has no such mechanism in place which would allow a majority of this Court to require another justice to recuse in a case. Prior to the situation concerning Justice McRae, apparently there has been no need for such rules being adopted by this Court.
This Court should not postpone deciding this important question to a later time. In response to Chief Hawkins' charge; I for one, am prepared to confront this issue of the lack of rules to compel recusal here and now. However, there is no majority in the case sub judice, therefore, I reserve passing on the subject until another case presents itself for our consideration. Sadly, this issue, although initially approved, will not be decided in the case now before us where one member elects not to take a position and the remainder of the Court is too divided on the subject matter. Because of the absence of a mechanism to do so, I do not hold the power to compel recusal at this time, and do not cast a vote to require Justice McRae's recusal in this case.
Why then is Justice McRae recusing himself? Why not tell the litigants and attorneys? More importantly, why not tell this Court? Has this issue become a mere guessing game? Enough already. Some members of this Court are concerned with the direction we appear to be heading and the apparent distrust by the public of the judicial system. We must not be distracted from the primary business of this Court  that being to render decisions in a just, competent and timely manner. In my view, the very integrity of the Court is now at stake. We must resolve this issue with integrity and finality and not be subjected to ever changing orders in this and other similar cases with recusal issues concerning Justice McRae. Our failure to do so will only allow the problem to escalate. I realize some may be critical and consider this to be dicta, however, there is a time to stand for something and that time is long since past due.
Needless to say, this is only the tip of the iceberg. There are other cases involving Bill Liston. How will they be handled by the Court? More importantly, how will they be handled by Justice McRae? Will this Court again be required to endure months of Justice McRae's flip-flopping, indecisiveness and manipulation of this Court? Having finally decided not participate in the case sub judice, will his decision be the same in the next case involving Bill Liston currently before the Court? Are we to be bombarded with motions for Justice McRae to recuse himself in numerous other cases in upcoming months? Why can't Justice McRae proceed with a decision in all of these cases now pending, enter the appropriate orders and put this issue to rest once and for all. I fear the worst.
I state simply, if I were in Justice McRae's situation, I would recuse myself, and give as my reason for doing so: "to avoid any appearance of impropriety." The remaining sole authority to consider these matters at this time falls upon other branches and/or agencies of government possessing that authority and charged with that responsibility. This matter needs to be terminated and Justice McRae should bring it to a conclusion with dignity, honor and respect for the judicial system of this state.
HAWKINS, C.J., and PRATHER, P.J., join this statement.
ROBERTS, J., joins this Statement in result only.
NOTES
[1] If I were of the view that the remaining Justices on this Court lacked the authority to require Justice McRae to recuse himself, I might very well be inclined to agree with Justice Banks in declining to express a precatory admonishment.

To my respected colleagues who are of the view that a majority of the Court would have the authority to require Justice McRae to recuse himself if we had heretofore promulgated a court rule granting us such authority, I deferentially differ. They recognize we need such a rule. Where is the time limit on a matter of this importance? May I inquire if any of them propose that the Court adopt such a rule, and if so, when?
[2] Rule 15(c), Texas Rules of Appellate Procedure recognizes the authority of the entire Court to rule upon a motion to disqualify a judge on the court:

(c) Prior to any further proceeding in the case, the justice or judge shall either recuse himself or certify the matter to the entire court, which will decide the motion by a majority of the justices or judges of the court sitting en banc. A justice or judge who is challenged shall not sit en banc to consider the motion. If a majority of the justices or judges are challenged, the court shall nonetheless decide the motion as to each justice or judge, one at a time, by a majority of the justices or judges sitting en banc except the particular justice or judge being considered each time shall not sit en banc to consider the motion as it directly affects that justice or judge.
[1] The article in question contained a front page photograph of Justice McRae on a motorcycle which commenced a lengthy series of multiple newspaper articles, television newscast reports, commentaries, and expressed public outrage, all of which caused concerns among this Court's members about Justice McRae's off the bench conduct.