# IN THE SUPREME COURT OF MISSISSIPPI
## NO. 98-CA-00223-SCT

*WAYNE B. BEYER, M. D.*

*v.*

*WAYNE S. EASTERLING*

| | |
|---|---|
| DATE OF JUDGMENT: | 01/07/1998 |
| TRIAL JUDGE: | HON. RICHARD WAYNE McKENZIE |
| COURT FROM WHICH APPEALED: | FORREST COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | ROBERT L. WELLS |
| | SEAN WESLEY ELLIS |
| | SHARON G. PLUNKETT |
| ATTORNEYS FOR APPELLEE: | THOMAS Y. PAGE |
| | JAN F. GADOW |
| NATURE OF THE CASE: | CIVIL - TORTS - OTHER THAN PERSONAL INJURY AND PROPERTY DAMAGE |
| DISPOSITION: | REVERSED AND REMANDED - 4/29/1999 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 5/20/99 |

**BEFORE PRATHER, C.J., MILLS AND WALLER, JJ.**

**PRATHER, CHIEF JUSTICE, FOR THE COURT:**

## STATEMENT OF THE FACTS AND CASE

¶1. Appellant Dr. Wayne Beyer ("Dr. Beyer") is an opthamalic surgeon who had been employed with Southern Eye Center ("SEC") in Hattiesburg for many years as of December, 1990. In late 1990, Dr. Beyer began to suffer from serious mental and emotional difficulties, and he sought treatment from Dr. Mark F. Schwartz, a psychologist who was then clinical director of River Oaks Psychiatric Hospital in New Orleans. Dr. Beyer notes that his psychiatric difficulties began to seriously interfere with his surgical duties and with his relations with his staff and his partner, Dr. Lynn McMahan ("Dr. McMahan").

¶2. Recognizing the serious nature of his illness, Dr. Beyer, on the advice of his psychologist, finally decided to withdraw completely from his practice, and he informed Dr. McMahan of his intention to do so. The terms of Dr. Beyer's withdrawal from the practice were complicated, however, by the existence of an employment contract which Dr. Beyer had signed with the SEC in 1986. Dr. Beyer had negotiated the 1986 employment contract with the assistance of appellee Wayne Easterling ("Easterling"), a local attorney, and the contract contained a disability provision which provided, in part, that Beyer would receive the equivalent of his prior year's income from SEC if he were forced to withdraw from the practice due to a disability. Dr. Beyer's income for the year preceding his withdrawal was $ 1.65 million, and he was aware that the clinic would not be eager to pay him this sum in disability compensation.

¶3. Given that Easterling had assisted him in negotiating the original employment contract, Dr. Beyer decided to retain his services once again in negotiating the terms of his withdrawal from his practice. Dr. Beyer met with Easterling on November 20, 1990, and informed him that the withdrawal agreement would need to be completed by December 28, 1990 (the last business day of the year) in order for the withdrawal to be effective. Dr. Beyer advised Easterling of the serious nature of his disability, including the fact that he was often unable to concentrate and that he sometimes experienced "blackouts" and dissociative spells.

¶4. On December 3, 1990, Easterling wrote Delbert Hosemann ("Hosemann"), counsel for SEC, to inform him of his representation of Dr. Beyer. Easterling also discussed Dr. Beyer's pending withdrawal with Hosemann, and he gave Hosemann permission to speak directly with his client outside of Easterling's presence. Dr. Beyer contends that, following early efforts to assist him in the withdrawal, Easterling became increasingly non-responsive to his phone calls and messages. Dr. Beyer submits that "Easterling had absolutely no contact with Dr. Beyer from November 20, 1990, the date of the initial meeting between Dr. Beyer and Easterling, and January 3, 1991, after the withdrawal process was complete."

¶5. During this time period, Dr. Beyer was forced to negotiate with SEC without the assistance of Easterling. On December 27, 1990, the finalized, but unsigned, Agreement Concerning Withdrawal was faxed to Dr. Beyer, and he tried unsuccessfully to contact Easterling for advice. The documents were to be signed the next day, but Dr. Beyer asserts that Easterling nevertheless failed to contact him or return his calls until January 3. The meeting occurred on December 28, and there is considerable uncertainty as to what transpired there. Dr. Beyer asserts that he did not knowingly sign the Agreement, and he submits that he only knowingly signed various bank statements and dividend checks. On January 3, 1991, Dr. Beyer finally reached Easterling, and they agreed that the Agreement was not satisfactory, given that it did not contain a disability provision. Dr. Beyer notes, however, that "this was too little too late, as the meeting had already occurred at which the Agreement was purportedly signed."

¶6. On March 11, 1991, Dr. Beyer filed suit in federal court against SEC to recover the disability and other payments which he claimed he was entitled to under the 1986 agreement. Dr. Beyer notes that his case was seriously weakened, however, when the signed Agreement Concerning Withdrawal was produced in open court. Dr. Beyer asserts that he had no recollection of having signed the Agreement, but Dr. Beyer's own handwriting experts were unable to exclude the possibility that he had in fact signed the Agreement. Dr. Beyer contends that, on advice of the federal magistrate judge, he was forced to settle for a greatly reduced sum.

¶7. On December 27, 1993, Dr. Beyer filed this legal malpractice lawsuit against Easterling. Following a number of delays and motions, including an unsuccessful attempt by Dr. Beyer to have the trial judge recuse

himself, the judge on January 7, 1998 dismissed Dr. Beyer's lawsuit on summary judgment. The trial judge ruled that the allegations in Dr. Beyer's lawsuit against Easterling were inconsistent with the facts and arguments set forth by Beyer in his earlier lawsuit against Southern Eye Clinic and in the instant case. Thus, the trial court concluded that Dr. Beyer's suit was barred as a matter of law by the doctrines of election of remedies, judicial estoppel, and equitable estoppel. Feeling aggrieved, Dr. Beyer timely appealed to this Court.

## ISSUES

**I. Whether Appellee was entitled to summary judgment at the circuit court level and more specifically, whether appellee was entitled to summary judgement under the theories of equitable estoppel, election of remedies and/or judicial estoppel.**

¶8. This Court's standard of review of dismissals on summary judgment is *de novo*. *Cities of Oxford v. Northeast Mississippi Electric Power Ass'n*, 704 So.2d 59, 64 (Miss. 1997). As provided by Miss. R. Civ. P. 56, summary judgment is only appropriate:

> (I)f the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.

In determining whether a "genuine issue as to any material fact" exists, this Court will view the facts in a light most favorable to the non-moving party. ***Brown v. Credit Center, Inc.***, 444 So.2d 358 (Miss. 1983).

¶9. The trial judge dismissed Dr. Beyer's lawsuit against Easterling based on the election of remedies doctrine. The doctrine of election of remedies serves to prevent a litigant from presenting inconsistent causes of action and/or testimony before the court. Under the election of remedies doctrine, a plaintiff's action is barred if:

> (1) There exist two or more remedies;
>
> (2) The remedies are inconsistent, and
>
> (3) The plaintiff has previously made a choice of one of them.

***Aetna Cas. & Sur. Co. v. Berry***, 669 So.2d 56, 72 (Miss. 1996). In ***Coral Drilling, Inc. v. Bishop***, 260 So.2d 463, 465-66 (Miss. 1972), this Court explained the policy considerations underlying the election of remedies doctrine:

> Courts will not permit litigants to solemnly affirm that a given state of facts exists from which they are entitled to a particular relief, and then afterwards affirm, or assume, that a contrary state of facts exists from which they are entitled to inconsistent relief.

¶10. In dismissing Dr. Beyer's lawsuit, the trial judge was concerned with the fact that, both in the federal lawsuit against SEC and in the early stages of this lawsuit against Easterling, Dr. Beyer had repeatedly contended that the signature on the Agreement was not his own. The trial judge wrote in his ruling that:

> It was not until Dr. Beyer's October 24, 1997 state court deposition herein that Dr. Beyer changed

his position ... and testified under oath (A) that the handwriting expert said he (Dr. Beyer) had signed the December 28, 1990, Agreement Concerning Withdrawal; (B) that Dr. Beyer accepts as a fact that he (Dr. Beyer) had signed this agreement, (C) that Dr. Beyer now contends that he had no recollection of signing this Agreement; (D) and that he would not have signed this Agreement on December 28, 1990 if he were lucid and in his right mind. ... The sworn position taken by Dr. Beyer as of October 24, 1997, as to his signature being on the December 28, 1990 Agreement is completely contrary to the "forged signature" sworn positions Dr. Beyer had taken on at least three occasions.

¶11. In response to the trial judge's findings, Dr. Beyer submits that he did not deny in his federal lawsuit that he had signed the Agreement. Dr. Beyer submits that, instead, he merely stated that he had not *knowingly* signed the agreement, and that his causes of action and testimony are accordingly not inconsistent. The record, however, does not support Dr. Beyer's assertions. Dr. Beyer did not merely deny that he had *knowingly* signed the Agreement; to the contrary, he specifically denied that he had signed the agreement at all. Dr. Beyer testified in his 1992 deposition in the federal lawsuit as follows:

> Q: If you would, look on the last page. What is the date, please ? I'm calling your attention to Exhibit 7, I believe.
>
> Dr. Beyer: That's correct. Page 9, December 28th, 1990.
>
> Q: Does it or not appear to have your signature ?
>
> Dr. Beyer: No sir.
>
> Q: You deny that being your signature ?
>
> Dr. Beyer: Yes, sir.
>
> Q: Do you deny having ever signed the original or any copies of that document ?
>
> Dr. Beyer: Yes, sir.

In a March 21, 1996 affidavit, Dr. Beyer stated once again that:

> 2. I did not sign, nor have I ever stated that I signed, the Agreement Concerning Withdrawal from my opthamalic surgery practice at Southern Eye Center, Hattiesburg, Mississippi.

It is thus apparent that Dr. Beyer did in fact state under oath that he had not signed the Agreement, and the trial judge was correct in so finding.

¶12. At the same time, however, this Court does not consider the present case to be a proper one for the application of the doctrine of election of remedies. On motion for summary judgment, we must consider the facts in the light most favorable to the non-moving party. The facts of the case, considered in such a light, support a conclusion that Dr. Beyer truly believed that he had not signed the Agreement Concerning Withdrawal, and this belief on his part would explain his actions in filing suit against SEC and in testifying that he had not signed the Agreement. As will be seen, the doctrine of election of remedies is in disfavor nationwide, and the doctrine is generally applied with caution and only in cases where the equities so dictate.[1]

¶13. Dr. Beyer hired Easterling to assist in negotiations in large part due to the presence of the disability provision, which all parties understood to be the key point of contention in Dr. Beyer's withdrawal. Dr. Beyer had a contractual right to the equivalent of a year's income (or $ 1.65 million dollars) in disability payments, and the record indicates that he was keenly interested in securing this amount. In a letter to Easterling written on November 28, 1990, Dr. Beyer stated that:

> The most important issue, as you are aware from 1986, is my severance. ... I've already told you the sum involved- 1.65 million - and you know the clause in my contract which covers this. I don't need to tell you that McMahan will not like paying this, though I don't believe he will balk at the end. You need to stand firm. We fought for this in 1986 for just this reason.

Given that Dr. Beyer was very interested in securing the full $ 1.65 million dollars in disability payments, it would be very surprising if he had, one month after writing the above letter, knowingly signed an agreement which provided for no disability payments whatsoever. It is noteworthy that there were one original and two duplicates of the Agreement, but only the original copy was allegedly signed by Dr. Beyer.[2]

¶14. The fact that only the original of the Agreement was signed, when considered in the light most favorable to Dr. Beyer, might tend to strengthen the suspicion that the Agreement was not knowingly signed by Dr. Beyer. Also relevant in this context is the fact that Dr. Beyer was withdrawing from his practice on the recommendation of his psychologist, due to mental disability. As such, Dr. Beyer's testimony in which he denied having signed the Agreement could be attributed, in part, to his lack of mental acuity at the time the Agreement was signed.

¶15. When considered in the light most favorable to Dr. Beyer, the facts support a conclusion that Dr. Beyer may well have testified inaccurately when he stated that he did not sign the Agreement Concerning Withdrawal, but that he was, nevertheless, dealing in a good faith manner with the facts as he understood them. The doctrine of election of remedies is generally not applicable to lawsuits which were filed with incomplete or inaccurate knowledge of the underlying facts. The Supreme Court of Texas held in *Bocanegra v. Aetna Life Ins. Co.*, 605 S.W.2d 848 (Tex. 1980) that the extent of a plaintiff's knowledge is a significant factor in determining whether the doctrine of election of remedies should apply. The Court held that:

> There is no election, that is, no inconsistency in choices, when one first unsuccessfully pursues a right or remedy which proved unfounded and then pursues one that is allowed. ... One's choice between inconsistent remedies, rights or states of facts does not amount to an election which will bar further action unless the choice is made with full and clear understanding of the problem, facts, and remedies essential to the exercise of an intelligent choice.

*Bocanegra*, 605 S.W.2d at 852. Likewise, 25 **Am.Jur.2d** Election of Remedies § 10, at 771 (1996) notes that "(i)f a litigant selects a remedy that was not available because either the facts or the law applicable to the facts was different than as supposed, the litigant has not made an election such that would preclude the litigant from choosing another proper, although inconsistent, remedy." (Footnote omitted).

¶16. In *O'Briant v. Hull*, 208 So.2d 784, 786 (Miss. 1968), this Court noted that the doctrine of election of remedies is to be applied with caution, stating that "(t)he authorities are uniform in their holdings that the doctrine is a harsh one, that it is disfavored in equity, and that it should not be unduly extended." See also

***Berry***, 669 So.2d at 72, *citing* ***O'Briant.*** This Court concludes that the equities of the present case do not support the dismissal of Dr. Beyer's lawsuit against Easterling based on his earlier statements under oath. Considerations of fairness and equity do not support the dismissal of a possibly meritorious lawsuit based on an earlier lawsuit which may have been filed based on a misunderstanding of the applicable facts. The trial judge's dismissal based on the election of remedies doctrine is accordingly reversed.

¶17. In addition to finding that Dr. Beyer's lawsuit was barred by the doctrine of election of remedies, the trial judge also found that the suit was barred by the doctrine of judicial estoppel. In ***Ivy v. Harrington***, 644 So.2d 1218 (Miss. 1994), this Court noted that "(j)udicial estoppel arises from the taking of a position by a party to a suit that is inconsistent with the position previously asserted in prior litigation." ***Ivy***, 644 So.2d at 1222. (quoting ***Daugherty v. Daugherty***, 474 So.2d 598, 602 (Miss. 1985)).

¶18. One treatise notes that, as with the election of remedies doctrine, the doctrine of judicial estoppel generally does not apply to false statements which were made without full knowledge of the applicable facts:

> Clearly, testimony given in a prior action does not estop the witness from testifying to the contrary in a subsequent action against one not a party to the prior action, where the former testimony was given by mistake or inadvertence or without full knowledge of the facts and is so explained by the witness in a subsequent action. In other words, the oath, to be binding as an estoppel, must be willfully false, or must have the effect of misleading the other party to his injury. ...

28 **Am.Jur.2d** Estoppel and Waiver § 71, at 702 (1996)(footnotes omitted).. The facts of the present case support a conclusion that Dr. Beyer's earlier denial of having signed the Agreement, if false, was not willfully false. It is true that Dr. Beyer denied having signed the Agreement both in his original suit and in his suit against Easterling, but this Court concludes that, for the reasons discussed earlier, the equities of the present case do not warrant a dismissal of the lawsuit based on these earlier statements. The trial court's ruling is reversed, and this case is remanded for trial.[(3)]

### II. Did the trial court properly deny Dr. Beyer's motion to recuse?

¶19. Dr. Beyer argues that Judge McKenzie erred in refusing to recuse himself from the present case. Dr. Beyer based his motion for recusal on the fact that Easterling has practiced before Judge McKenzie in several cases. Dr. Beyer argues that:

> Easterling has practiced law in Hattiesburg since 1968. He testified that his practice currently consists primarily of litigation in the Hattiesburg area. The matter has been assigned to the Honorable Judge Richard W. McKenzie, who, alone, has presided over the Circuit Court of Forrest County, Mississippi since 1979. Dr. Beyer has not resided in Hattiesburg since 1991 and currently lives in Maryland. One can clearly see why Dr. Beyer would question Judge McKenzie's impartiality given the obvious facts: an out of town person comes into Forrest County and sues a local lawyer for legal malpractice, and the judge is a local who has known the lawyer professionally for approximately 20 years.

Beyer further notes that:

> Since 1985 there have been five reported cases appealed to the Mississippi Supreme Court in which Easterling or his firm was practicing before Judge McKenzie. ... Moreover, Easterling has had

numerous cases, over forty (40), before Judge McKenzie that were not reported or appealed, or that settled before trial.

¶20. In *Jenkins v. Forrest Cty Gen. Hosp.*, 542 So.2d 1180 (Miss. 1988), this Court adopted an objective test for recusal, pursuant to which a judge is "required to disqualify himself if a reasonable person, knowing all the circumstances, would harbor doubts about his impartiality." *Jenkins*, 542 So.2d at 1181. On appeal, however, this Court applies the manifest error standard in reviewing a trial judge's refusal to recuse himself. This Court presumes that a trial judge is qualified and unbiased, and this presumption may only be overcome by evidence which produces a reasonable doubt about the validity of the presumption. *Bredemeier v. Jackson*, 689 So.2d 770, 774.

¶21. Dr. Beyer notes that, in *Jenkins*, this Court held that the very same Judge McKenzie had manifestly erred in failing to recuse himself from that case. It is apparent, however, that the facts of the present case do not present as compelling a case for disqualification as in *Jenkins*. In *Jenkins*, this Court noted that Judge McKenzie's brother was a senior partner in a law firm representing the defendant hospital in a medical malpractice action and we also noted that there were "allegations and testimony that the medical community in Forrest County assisted in electing (Judge McKenzie)." *Jenkins*, 542 So.2d at 1181.

¶22. In the present case, by contrast, Dr. Beyer only established that Easterling has practiced before Judge McKenzie during the last two decades. In the view of this Court, the fact that a lawyer practiced before a given judge for a lengthy period of time might not, by itself, be sufficient for this Court to find that judge manifestly in error for refusing to recuse himself in a case in which the lawyer is a party. At the same time, given that we have elected to reverse with regard to the summary judgment issues, it is unnecessary to determine whether Judge McKenzie committed reversible error in refusing to recuse himself. Instead, we simply conclude that it would be preferable that another judge hear the case on remand in order to avoid any appearance of impropriety. We accordingly direct that another judge hear this case on remand, although we expressly decline to make a finding that Judge McKenzie committed reversible error in refusing to recuse himself.

¶23. **REVERSED AND REMANDED.**

**SULLIVAN, P.J., BANKS, McRAE, SMITH, MILLS AND WALLER, JJ., CONCUR. PITTMAN, P.J., AND COBB, J., NOT PARTICIPATING.**

1. See 25 **Am.Jur.2d** Election of Remedies § 4, at 765-66 (1996) noting that "(t)he courts have criticized the doctrine of election of remedies, or at least have treated it circumspectly. Commonly criticized as harsh, the doctrine will not be lightly enforced or unduly extended. It should be applied not in a formulaic way, but rather with due consideration for the equities of the case. ... Following the adoption of the Federal Rules of Civil Procedure, the doctrine of election of remedies in federal courts is either sparingly applied or no longer applicable." (Footnotes omitted).

2. In a April 5, 1991, letter disclosing the existence of the signed Agreement Concerning Withdrawal, Hosemann wrote that: "Later that Friday afternoon Wayne [Beyer] signed one of the documents and did not sign the other two copies that were forwarded to he and Lynn in Hattiesburg for signing. I am enclosing a copy of that document for your information. The original of the Withdrawal Agreement was signed and the other two additional copies were not signed."

3. The trial judge also found that the doctrine of equitable estoppel barred Dr. Beyer's lawsuit, but this doctrine is even less applicable to the facts of the present case than the doctrines of election of remedies and judicial estoppel. A party asserting the doctrine of equitable estoppel must show that he has changed his position in reliance upon the conduct of another and that he has suffered detriment caused by his change of position. See *PMZ Oil Co. v. Lucroy*, 449 So.2d 201, 206 (Miss. 1984). Easterling is unable to make such a showing in the present case. Therefore, equitable estoppel does not apply, and the trial court also erred in granting summary judgment on that basis.