839 So.2d 530 (2003)
Dottie P. DODSON
v.
SINGING RIVER HOSPITAL SYSTEM and Singing River Hospital.
No. 2001-CA-00655-SCT.
Supreme Court of Mississippi.
March 6, 2003.
Robert W. Smith, Jackson, attorney for appellant.
*531 John G. Corlew, Joseph J. Stroble, Jackson, Brett K. Williams, Roy C. Williams, Pascagoula, attorneys for appellees.
EN BANC.
WALLER, Justice, for the Court.
¶ 1. This Court's prior opinion is withdrawn, and this opinion is substituted therefor.
¶ 2. Dottie P. Dodson sued Singing River Hospital System and Singing River Hospital for injuries she allegedly sustained after a surgery. The Jackson County Circuit Court, sitting without a jury pursuant to Miss.Code Ann. § 11-46-13(1) (2002) of the Mississippi Tort Claims Act, held in favor of Singing River, entered judgment accordingly, and denied Dodson's post-trial motion to alter or amend or for a new trial. Dodson appeals, contending that Judge Dale Harkey should have recused himself. We agree, and we reverse and remand.

FACTS AND PROCEDURAL HISTORY
¶ 3. On October 13, 1997, Dottie P. Dodson, a sixty-eight-year-old woman, underwent back surgery at Singing River Hospital in Pascagoula. She alleged that on October 21, 1997, a wheelchair transfer attendant ran the wheelchair in which she was riding into a door facing thereby giving her a severe jolt. Dodson was subsequently diagnosed with a non-displaced pelvic fracture which her doctors linked to the wheelchair incident. According to Dodson, she incurred over $27,000 in medical expenses.
¶ 4. Dodson pursued an administrative claim against Singing River pursuant to the Mississippi Tort Claims Act, Miss.Code Ann. § 11-46-1 to -23 (2002). When no action was taken by the hospital, Dodson filed a complaint in Jackson County Circuit Court seeking $250,000 in damages. The case proceeded to non-jury trial on March 27, 2000, before Judge Dale Harkey who took the case under advisement at the close of the trial the next day.
¶ 5. On September 14, 2000, Judge Harkey issued a decision and entered judgment on September 22, 2000, in favor of Singing River. Dodson filed a motion to alter, amend and void the judgment or alternatively for a new trial on October 4, 2000, based on an alleged violation of Scott v. Flynt and that Judge Harkey should have recused himself.[1]
¶ 6. Dodson alleges that after Judge Harkey took her case under advisement, there came to light evidence of a prior relationship[2] between Judge Harkey and the law firm of Colingo, Williams, Heidelberg, Steinberger & McElhaney (Colingo Williams), counsel for Singing River.[3] *532 Specifically, Karl Steinberger from Colingo Williams represented Judge Harkey when he was serving as executor of his mother's estate. The representation concluded on June 12, 1998, with fees totaling $10,087.63 paid by the estate. James Heidelberg also represented Judge Harkey and his wife in a residential construction action which was filed on May 25, 1995. A stipulation of dismissal was entered in that action on January 13, 1999. Judge Harkey and his wife were not charged for the services provided in the construction litigation. It was also established that James Heidelberg of Colingo Williams served as campaign treasurer of the Dale Harkey Campaign Committee in 1998 and that Colingo Williams hired three of Judge Harkey's assistant district attorneys, one before he was elected Circuit Court Judge and two after.
¶ 7. After Judge Harkey had taken Dodson's case under advisement but before entering a decision, he, on August 11, 2000, recused himself sua sponte from a pending case in Jackson County Circuit Court, Wesley v. Jackson County Bd. of Supervisors. Heidelberg represented the Jackson County Board of Supervisors. Judge Harkey's reason for recusal was his relationship with Heidelberg and his reading of our decision in Aetna Casualty & Surety Co. v. Berry, 669 So.2d 56 (Miss.1996).[4] That same day, Judge Harkey went to Heidelberg's office at Colingo Williams to discuss the Berry case and the recusal issue. While there, Joe Colingo, Heidelberg's partner, went into Heidelberg's office and made a remark that they would have to withhold contributions if Judge Harkey was going to recuse himself. Colingo Williams contends that this remark was made in jest; however, Dodson asserts that Colingo threatened Judge Harkey. A similar comment was made at a pretrial conference in a separate matter.[5]
¶ 8. Judge Harkey conducted a hearing on January 19, 2001, on Dodson's motion. Dodson called as witnesses several attorneys representing plaintiffs in other actions pending before Judge Harkey who filed motions to recuse him as well as calling members of Colingo Williams. Judge Harkey entered an order on April 9, 2001, denying Dodson's motion and concluding there was no appearance of impropriety and that recusal was not warranted.

DISCUSSION

WHETHER JUDGE HARKEY SHOULD HAVE RECUSED HIMSELF.
¶ 9. The rule concerning disqualification of a judge in effect at the trial of this case was Canon 3, subdivision C, of the Code of Judicial Conduct. It states, "A judge should disqualify himself in a proceeding in which his impartiality might reasonably be questioned...."[6] In conjunction with this canon, we have held consistently that the objective "reasonable person knowing all *533 of the circumstances" is the proper standard by which we determine if a judge should have recused himself. Farmer v. State, 770 So.2d 953, 956 (Miss.2000); Tubwell v. Grant, 760 So.2d 687, 688 (Miss. 2000); Beyer v. Easterling, 738 So.2d 221, 228 (Miss.1999); Walls v. Spell, 722 So.2d 566, 571 (Miss.1998); Garrison v. State, 726 So.2d 1144, 1152 (Miss.1998); Duplantis v. State, 708 So.2d 1327, 1345 (Miss. 1998); Evans v. State, 725 So.2d 613, 677 (Miss.1997); Bredemeier v. Jackson, 689 So.2d 770, 774 (Miss.1997); Hunter v. State, 684 So.2d 625, 630 (Miss.1996).
¶ 10. It is clear that the standard for recusal is a reasonable person knowing all the circumstances. It is also clear that judges are presumed to be qualified and unbiased. Farmer, 770 So.2d at 956; Upton v. McKenzie, 761 So.2d 167, 172 (Miss. 2000); Tubwell, 760 So.2d at 688; Norton v. Norton, 742 So.2d 126, 131 (Miss.1999); Beyer, 738 So.2d at 228; Garrison v. State, 726 So.2d 1144, 1152 (Miss.1998); Evans, 725 So.2d at 677; Walls v. Spell, 722 So.2d 566, 571 (Miss.1998); Duplantis, 708 So.2d at 1345; Hunter, 684 So.2d at 630; Green v. State, 631 So.2d 167, 177 (Miss.1994); Collins v. Joshi, 611 So.2d 898, 901 (Miss. 1992).
¶ 11. These cases are inconsistent regarding the burden of proving the presumption has been rebutted. We have held in numerous cases that the evidence presented must produce a reasonable doubt as to a judge's impartiality. Farmer, 770 So.2d at 956; Tubwell, 760 So.2d at 688; Beyer, 738 So.2d at 228; Garrison, 726 So.2d at 1152; Evans, 725 So.2d at 677; Walls, 722 So.2d at 571; Duplantis, 708 So.2d at 1345; Hunter, 684 So.2d at 630; Green, 631 So.2d at 177. We have likewise held that the presumption is overcome only by showing "beyond a reasonable doubt" that the judge was biased or unqualified. Upton, 761 So.2d at 172; Norton, 742 So.2d at 131; Collins, 611 So.2d at 901.
¶ 12. Surely, it could not have been intended that the standard for recusal be so stringent as to warrant the criminal law "beyond a reasonable doubt" burden of proof. Quoting Turner, we stated in Collins that "[t]o overcome the presumption, the evidence must produce a `reasonable doubt' (about the validity of the presumption)." 611 So.2d at 901. However, in the very next paragraph we stated, "This presumption may only be overcome by evidence showing beyond a reasonable doubt that the judge was biased or not qualified." Id. (emphasis added). In Norton, we quoted Collins in applying the "beyond a reasonable doubt" burden. 742 So.2d at 131. Also, in Upton, we cited Bredemeier and Turner as the sources of the beyond a reasonable doubt burden when both of those cases clearly applied the "produces a reasonable doubt" burden. Upton, 761 So.2d at 172. See Bredemeier, 689 So.2d at 774 (quoting Turner); Turner, 573 So.2d at 678 (applying "must produce a reasonable doubt" burden).
¶ 13. The stringent "beyond a reasonable doubt" burden is, in our opinion, incompatible with the standard of a hypothetical "reasonable person knowing all the circumstances." The proper standard is that recusal is required when the evidence produces a reasonable doubt as to the judge's impartiality. The misapplication of the "beyond a reasonable doubt" burden in the above-discussed cases was nothing more than a minor oversight and would have led to the same conclusion. We now clarify the burden of proof from what was previously stated in Upton, Norton, and Collins.
¶ 14. In our opinion, a reasonable person knowing all the circumstances here would have a reasonable doubt regarding *534 Judge Harkey's impartiality in this case. James Heidelberg, a Colingo Williams partner, served as treasurer in Judge Harkey's election campaign. Another Colingo Williams lawyer served as attorney of record in the estate proceedings of Judge Harkey's mother. Other Colingo Williams lawyers represented Judge Harkey and his wife for four years in a defective residential construction case. At no time was Judge Harkey or his wife charged for the services rendered in the residential construction case. Judge Harkey also recused himself in the Wesley v. Jackson County Bd. of Supervisors case when it was disclosed that Heidelberg served as Harkey's campaign treasurer. Judge Harkey also met with Heidelberg at the Colingo Williams law office to discuss the issue of recusal in that case. At that meeting, remarks were made by Colingo concerning future campaign contributions although both sides strenuously contest the exact meaning and tenor of those remarks. Similar remarks were also made at another meeting attended by Colingo Williams lawyers and plaintiff's counsel in another case. What is compelling about Judge Harkey's recusal in Wesley v. Jackson County Bd. of Supervisors is at the time he recused himself from that case, he had taken Dodson's case under advisement and had not yet rendered a decision. When viewed as a whole, an objective reasonable person knowing all of these circumstances would harbor doubts as to Judge Harkey's impartiality in this case.
¶ 15. Justice Banks's concurring opinion in Collins v. Joshi 611 So.2d 898 (Miss. 1992), supports this position. In Collins, the trial judge had represented the trustees of Neshoba County General Hospital, one of the defendants in the subject suit, for four years. 611 So.2d at 900. Neshoba General hired Dr. Joshi, another defendant, during the judge's representation of the hospital. Id. The judge had also sued Dr. Soriano, the plaintiff's expert witness, on behalf of the hospital. Id. The majority concluded that the judge should have recused himself. Justice Banks wrote separately and stated, "In my view, while none of the factors standing alone would necessarily dictate recusal in the instant case, in combination they create reasonable doubt as to impartiality...." Id. at 903. He also found a "totality of circumstances which compel the conclusion that `a reasonable person might harbor doubts' about the judge's impartiality." Id. (emphasis added). That same "totality of circumstances" inquiry is appropriate in this case, and a reasonable person, not a lawyer or judge, might very well have harbored the same doubts about Judge Harkey's impartiality in this case.
¶ 16. We are in no way questioning the integrity of Judge Harkey who has earned an outstanding reputation over his many years of public service. We likewise do not question the motive or integrity of the lawyers of Colingo Williams. But, we must be forever mindful of our duty to guard jealously "the public's confidence in the judicial process." Id. (quoting Liljeberg v. Health Servs. Acquisition Corp., 486 U.S. 847, 864, 108 S.Ct. 2194, 100 L.Ed.2d 855 (1988)). We must be vigilant to avoid the appearance of impropriety in any and all of our proceedings as judges. See Code of Judicial Conduct Canon 2. Judge Harkey should have granted Dodson's motion to alter or amend and recused himself.

CONCLUSION
¶ 17. We find that under a totality of the circumstances analysis a reasonable person might have reasonable doubts as to Judge Harkey's impartiality in this case. We reverse the trial court's order denying Dodson's motion to alter or amend or for new trial, we vacate the trial court's judgment, *535 and we remand for a new non-jury trial before another trial judge, and any other necessary proceedings consistent with this opinion.
¶ 18. REVERSED AND REMANDED.
PITTMAN, C.J., SMITH, P.J., COBB AND CARLSON, JJ., CONCUR. DIAZ, J., CONCURS IN RESULT ONLY. McRAE, P.J., AND EASLEY, J., DISSENT WITHOUT SEPARATE WRITTEN OPINION. GRAVES, J., NOT PARTICIPATING.
NOTES
[1] A violation of Scott v. Flynt, 704 So.2d 998, 1004 (Miss. 1996), concerns an improper waiver of a patient's medical privilege via a treating physician's ex parte contact with opposing counsel. While at trial, it was learned that Dr. Neal Polchow, a diagnostic radiologist, had reviewed Dodson's x-rays and later discussed the interpretation ex parte with Singing River's counsel. Dodson argued that Dr. Polchow was a treating physician and that the ex parte contact by Singing River counsel was a violation of Scott. However, prior to a resolution of this issue, Dr. Polchow was released as a witness, and Singing River instead called Dr. Roland Mestayer to testify. Because of this, Dodson argues she is entitled to a new trial. We decline to address this issue because Dr. Polchow was withdrawn as a witness and did not testify to anything substantive.
[2] There is no indication in the record that Dodson had any prior knowledge of the relationship.
[3] Roy C. Williams and Brett K. Williams are the attorneys of record for Singing River in this case and are members of the Colingo Williams law firm.
[4] In Berry, we held that a chancellor should have recused himself from a case in which a lawyer for one of the parties had represented the chancellor in a prior divorce action and was involved in the chancellor's reelection campaign. 669 So.2d at 75.
[5] Colingo Williams contributed $250 to Judge Harkey's campaign.
[6] Canon 3, subdivision E, of the Code of Judicial Conduct states the current rule concerning disqualification of a judge. It states, "Judges should disqualify themselves in proceedings in which their impartiality might be questioned by a reasonable person knowing all the circumstances or for other grounds provided in the Code of Judicial Conduct or otherwise as provided by law ...." (emphasis added). The "reasonable person" standard developed in the case law over the years has been integrated into subdivision E.