CARLTON, J.,
dissenting:
¶27. I respectfully dissent from the decision'of the majority. I respectfully 'submit that, on remand, Judge Lancáster abused his discretion by failing to grant Toulman’s motion for a new trial, which Toulman’ filed pursuant to Rule 59(a) of the Mississippi Rules of Civil Procedure. When considering the denial of a motion for a new trial, this Court reviews for abuse of discretion.[2] We similarly review a trial judge’s decision to recuse for manifest error. Steiner v, Steiner, 788 So.2d 771, 775 (¶ 9) (Miss.2001). Where an attorney raises an allegation of judicial prej *963 udice or bias by: a-trial judge, this Court reviews the record as a whole and reviews the totality of the circumstances to determine whether, regardless of whether the judge is actually biased or partial, an objectively reasonable person would question the judge’s impartiality.[3] To overcome the presumption that a judge is qualified and unbiased, the evidence, must raise a reasonable doubt as to the validity of the presumption.[4] The standard is designed to promote public confidence in the judicia-. ry.'
¶ 28. This dissent, does not dispute that we review the grant or denial of a motion for a new trial for abuse of discretion. There is also not a dispute between this dissent and the majority opinion as .to the objective test that applies to determine if an‘ objectively reasonable person, under the totality of the circumstances, would question Judge Roberts’s impartiality. I respectfully submit that the majority, like Judge Lancaster’s opinion below, erroneously applies the objective test and relevant caselaw to the facts of the instant matter by reviewing for only actual bias or prejudice instead of determining whether the “appearance” of bias or prejudice objectively exists. I further submit that the majority errs by failing to consider the totality of the circumstances .‘since the majority limits its review to only the February 2009 trial, the proceedings and orders following that trial, and the April 8, 2009 hunting trip.
¶29. The totality of the . circumstances in the record reflects that the instant matter began several years before on October 19, 2007, when Grace filed her petition for contempt, and her motion for modification. The record establishes that Judge Roberts went hunting with Smith, Grace’s attorney, on Smith’s property several times in 2007. Like Judge Lancaster.-below, the majority errs in excluding these circumstances from its consideration of the totality of the circumstances to determine whether an appearance of partiality or bias resulted from Judge Roberts’s extrajudicial activities and social .relationship with an attorney in this matter.
¶ 30. Indeed, the facts and procedural history of this case reflect that much occurred in this case prior to the limited events considered by the majority. The two April 2009 orders at issue on appeal reflect the culmination and determination of matters resulting from Toulman’s 2008 recusal motion and raised in an action Grace initiated on October 19, 2007, when she filed her civil-contempt petition and motion for modification. After Gráce filed her petition for civil contempt and motion for modification in October 2007, a plethora df hearings, orders, and rulings ensued in 2007, 2008, and 2009.
¶ 31. An agreed order was entered in December 2007 that allowed Toulman visitation with his daughter, Hannah, and reappointed a GAL for the children. Grace then filed a motion for emergency relief on May 20, 2008, and sought restrictions on Toulman’s visitation. Toulman’s original attorney withdrew from the case, and on May 23, 2008, Robinson was substituted as Toulman’s new attorney. As the record reflects, Judge Roberts restricted Toulman’s visitation. On October 6, 2008, *964 Toulman filed a motion for Judge Roberts’s recusal, and Grace filed a counter-motion requesting that Judge Roberts impose sanctions on Toulman for filing the motion to recuse. The February 2009 trial ultimately determined issues raised in the civil-contempt petition and motion for modification that Grace filed on October 19, 2007. In summary, the record shows that many matters, including the October 6, 2008 recusal motion filed by Toulman, were raised and addressed in this ease well before the three-day trial held in February 2009.[5]
¶ 32. In support of Toulman’s recusal motion, Toulman’s attorney asserted that an appearance of bias was reflected in various comments and rulings made by Judge Roberts, including the following: (1) comments made by Judge Roberts in chambers; (2) Toulman’s claims that he saw Grace’s brother coming from Judge Roberts’s chambers in Marshall County and that his daughter, Hannah, saw Grace’s brother go into Judge Roberts’s chambers at a hearing in Marshall County in May 2008; (3) Judge Roberts’s actions of stripping Toulman of visitation and allowing the late designation of experts; (4) Judge Roberts’s failure to timely implement some gradual visitation or other gradual relationship improvement; (5) Judge Roberts’s failure to recognize any positive actions taken by Toulman; (6) Judge Roberts’s ex parte conversation about the case with an attorney not involved in the case; (7) Judge Roberts’s ruling issued on September 18, 2008, which denied Toulman’s motion to compel Grace to provide certain cancelled checks; and (8) Judge Roberts’s inquiry on July 25, 2008, as to whether Toulman had been indicted.
¶ 33. The record of the hearing on the recusal motion reflects that Toulman’s attorney questioned whether Grace’s attorney engaged in ex parte communication with Judge Roberts to gain the information set forth in Grace’s response to Toul-man’s recusal motion, wherein Grace responded by stating that Judge Roberts had read the court file and had seen an indictment in the file. In questioning the source of Grace’s information, Toulman’s attorney explained that no hearings or dis-positive matters had been set between the time when Grace received Toulman’s recu-sal motion and when Grace served her response on Toulman.
¶ 34. The record reflects that Judge Roberts provided no disclosure of his extrajudicial hunting activities with Grace’s attorney at any time during the consideration of, or the hearing on, Toulman’s motion to recuse. Judge Roberts’s lack of disclosure of the extrajudicial activities and social relationship with Grace’s attorney, occurring while this case was pending before him, deprived the parties of knowledge regarding a matter of potential disqualification and provided the Mississippi Supreme Court an incomplete factual picture upon which to determine whether to grant Toulman’s petition for interlocutory appeal of Judge. Roberts’s denial of his recusal motion. A review of the record also shows that, in his April 14, 2009 order imposing sanctions on Toulman for filing the 2008 recusal motion, Judge Roberts failed to provide specific reasons for the sanctions as required by the Litigation Accountability Act (the Act).[6]
*965 ¶35. Judge Roberts’s bench ruling on Toulman’s recusal motion found that Toul-man admitted he did not actually see Judge Roberts talk to Grace or her-brother and that Toulman admitted he could not see what was going on through the door of Judge Roberts’s chambers. Judge Roberts found that Toulman’s daughter, Hannah, also testified that she did not actually see Grace or her brother talk to Judge Roberts but that she just saw them go into his chambers. However, the record of Judge Roberts’s bench ruling reflects that Judge Roberts acknowledged that people commonly roamed the halls behind the bench in the Marshall County courtroom before proceedings “as they visit[ed] [the] restrooms, coffee room[,] and other things.”
¶ 36. Judge Roberts denied Toulman’s motion to recuse and determined that Gráee’s motion for sanctions would be determined at a later date. In granting Grace’s countermotion for sanctions in response to Toulman’s recusal motion, the record shows that Judge Roberts imposed sanctions on Toulman by oral ruling over a year later in a hearing on March 10, 2009. The record further shows that Judge Roberts subsequently executed the written order imposing those sanctions on April 14, 2009, and that, in so doing, he awarded Grace $4,305 in attorney’s fees; $733.11 in expenses; and $900 to the GAL. Also, on April 9, 2009, Judge Roberts executed an order that determined the issues raised in Grace’s, original petition for civil contempt and motion for modification that she filed on October 19, 2007. Toulman subsequently requested a new trial on the matters determined by these two April 2009 orders and related judgments.
¶ 37. The majority’s reasoning is misplaced in asserting that only matters occurring at or after the February 2009 trial need to be considered. The record reflects that Judge Roberts presided over this instant matter since October 19,. 2007,■ and that he held numerous hearings and issued a plethora of orders and rulings in 2007,. in 2008, and before the February 2009 trial. The failure to review the totality of the circumstances in this case constitutes an erroneous application of the relevant caselaw, as does the failure to review for the appearance of bias or prejudice.
¶ 38. On April 9, 2009, Toulman’s attorney presented Judge Roberts with her discovery of Judge Roberts’s extrajudicial activities with Grace’s attorney. After informing Judge Roberts of the new evi-dencé, Toulman’s attorney further informed Judge Roberts of her intent to file a new recusal motion based upon the discovery of his extrajudicial activity and the resulting appearance of a lack of impartiality,[7] After the matter was presented to him, Judge Roberts issued a post-trial sua sponte recusal order on April 20, 2009. In his recusal order, Judge Roberts stated that, on his own motion, he found the *966 interests of justice and equity required him to recuse.[8]
¶ 39. Precedent reflects that we review a judge’s decision to recuse for manifest error and that we will not reverse as long as the judge applied, the correct legal standard. Steiner, 788 So.2d at 775 (¶ 9). As a reviewing appéllate court, we must give sufficient deference to Judge Roberts’s own finding that justice required his recu-sal due to his extrajudicial activities and the appearance of a lack of impartiality with regard to this pending matter. Id. at (¶¶ 9-12). Moreover, we múst adhere to our objective standard of review of alleged bias and prejudice in acknowledging that the totality of the circumstances and the evidence in the record support Judge Roberts’s finding that justice required his recusal because of an appearance of bias or lack of impartiality. Id. See generally Jenkins v. Forrest Cnty. Gen. Hosp., 542 So.2d 1180, 1181 (Miss.1988) (discussing the extrajudicial ' circumstances under which a judge should recuse himself).
If 40. Due to the appearance of bias and the impact of Judge Roberts’s extrajudicial relationship with Grace’s attorney, the interests of justice are' best served by reversing and granting a néw trial. The record reflects that Judge Roberts failed to disclose his extrajudicial social relationship and his hunting trips when determining motions or during other hearings in 2007 and 2008. There was also' no disclosure or remittal before the February 2009 trial or the March 2009 hearing. In addition, even after denying Toulman’s recusal motion and possessing awareness of Toul-man’s concerns regarding bias, Judge Roberts engaged in another hunting trip with Smith on April 8, 2009. This last hunting trip occurred shortly after the February 2009 trial and immediately before the date of a writ of inquiry that was scheduled for April 9, 2009, to determine a bill submitted by Smith’s Arm for over $39,000 in attorney’s fees. After reviewing the record, this Court has no choice but to reverse and remand for a new trial. The issue is not wrongdoing on Judge Roberts’s part but rather' the potential for such and the appearance of bias to the general public. See Jenkins, 542 So.2d at 1181.
¶41. In applying our caselaw to the totality of the circumstances in this case, we must acknowledge that an appearance of bias sufficient to raise a reasonable doubt as to a judge’s impartiality, as determined by a reasonable person knowing all the circumstances, is measured by an objective standard and requires no actual wrongdoing by the judge. Id. In applying an objective standard to this case,-an appearance of partiality arises from the totality of the evidence and the resulting inferences due to Judge Roberts’s extrajudicial activities and social relationship with an attorney in this contested matter then pending before him and due to Judge Roberts’s nondisclosure of these activities.[9] Due to the appearance of extrajudicial influence stemming from Judge Roberts’s extrajudicial activities with Smith during *967 the present case, the totality-of the circumstances reflects-sufficient objective reasonable doubt to overcome the presumption that Judge Roberts was unbiased.[10]
,¶42. After learning from a deputy sheriff about Judge Roberts’s social relationship and extrajudicial activity with opposing counsel, Toulman now seeks a new trial on the matters determined by the two orders Judge Roberts executed in April 2009, nunc pro tunc to March 10, 2009, and the related judgments.. To support his request for a new trial, Toulman argues that Judge Lancaster abused his discretion by denying Toulman’s motion for a new trial. As stated, Judge Roberts’s own're-cusal order recognized that justice required his recusal. ’We should likewise acknowledge that the appearance of partiality reflected by the totality of the circumstances in this case objectively created a reasonable doubt sufficient to cause a reasonable person to question Judge Roberts’s impartiality, and upon appellate review, this Court should find that Judge Lancaster abused his discretion by denying Toulman’s motion for a new trial.[11] Judge Lancaster’s erroneous failure to review the totality of the-circumstances and his- erroneous- failure to review for the appearance of bias constituted an abuse- of discretion. ■■ •
'S 43. In denying Toulman’s motion for a new trial, I submit that Judge Lancaster erred. by considering , the April 8, 2009 hunting trip in. isolation from other circumstances qnd -by .reviewing .only for actual bias.[12]. Furthermore,, Judge Lancaster failed to remedy-the appearance of judicial bias and the appearance of prejudice arising from the facts and inferences of Judge Roberts’s aforementioned conduct, extrajudicial activities, and rulings. Now, upon review, our task requires us to determine whether, under the- totality of the circumstances, due process and the appearance of judicial bias warrant a hew trial and whether Judge Laftcaster abused his- discretion by failing to grant Toulman’s request for a new trial." See Caperton v. A.T. Massey Coal Co. 556 U.S. 868, 872, 129 S.Ct. 2252, 173 L.Ed.2d 1208 (2009) (applying an objective standard and determining whether, under the totality of the circumstances, the appearance of judicial bias' or prejudice demanded a new trial). See also United States v. Murphy, 768 F.2d 1518, 1538 (7th Cir.1985) (finding that a judge’s vacation plans with a prosecutor reflected a social relationship and implied extensive personal contact between the judge and the prosecutor). Precedent establishes that dué process- requires that a finding of judicial bias, even absent a finding of actual bias, warrants reversal. See *968 Caperton, 556 U.S. at 883-84, 129 S.Ct. 2252.
¶44. I agree with the majority that mere social contact between a judge and an attorney is not the issue in this litigation and is not the basis for recusal. I further submit that mere adverse rulings fail to constitute a sufficient showing of bias. In addition, I agree with the majority that accepting a unilateral invitation from the attorney of a party in a pending case is problematic, particularly where the conduct occurs on several .or multiple occasions. In In re Anderson, 412 So.2d 743, 744-45 (Miss.1982), the Mississippi Supreme Court explained that, absent proof of ill will or malice, due process should be remedied through appeal or otherwise and not through disciplinary proceedings. The task before this Court in the instant appeal necessarily requires us to remedy the injury to due process caused by the objective appearance of partiality arising due to the circumstances surrounding Judge Roberts’s extrajudicial activities with an attorney in a pending matter. An appearance of bias or prejudice may exist without proof of ill will or malice and involves no disciplinary proceeding. See Dodson v. Singing River Hosp. Sys., 839 So.2d 530, 534 (¶ 16) (Miss.2003) (finding that the totality of the circumstances showed that the trial judge should have recused but also explaining that the appellate court was in no way questioning the motive or integrity of the trial judge). Judge Roberts’s integrity is evident in the stand he took to honor justice when realizing the impact on the integrity of his rulings in this case due to his extrajudicial activities.
¶ 45. As stated, we are not required to find any ill motive or actual bias to acknowledge the existence of, and to remedy, an appearance of judicial partiality. “[A] judge may ..., through negligence or ignorance not amounting to bad faith, behave in a manner prejudicial to the administration of justice so as to bring the judicial office into disrepute.” In re Anderson, 412 So.2d at 745 (quoting In re Nowell, 293 N.C. 235, 237 S.E.2d 246, 255 (1977)). The result is the same, regardless of whether bad faith, negligence, or ignorance is involved. Id. See also Beyer v. Easterling, 738 So.2d 221, 228 (¶ 22) (Miss.1999) (reversing summary judgment and directing that, on remand, a different trial judge hear the case to avoid the appearance of partiality). Precedent and the Mississippi Code of Judicial Conduct acknowledge that the appearance of partiality arising from extrajudicial conduct can indeed create reasonable doubt to objectively question the impartiality of a judge and that no proof of wrongdoing by the judge is required. See Jenkins, 542 So.2d at 1181. All that is required is for the totality of the evidence, circumstances, and resulting inferences to objectively raise reasonable doubt as the impartiality of a judge. Precedent explains that the appearance of judicial partiality reflects the potential for wrongdoing and reflects the appearance of partiality to the general public and to the litigants whose cause is pending before the judge. Id. In the present case, the appearance of partiality exists because the circumstances, including the apparent personal relationship, the extrajudicial activities occurring contemporaneously with the pending case, and the nondisclosure of these facts, would objectively cause a reasonable person, knowing all the circumstances, to question Judge Roberts’s impartiality. Furthermore, as Smith’s post-trial testimony established, the extrajudicial activities occurred in 2006, 2007, and 2009.
¶ 46. The United States Supreme Court and our state supreme court have both recognized not only the right to an impartial judge but also that the lack of an impartial judge'fails to amount to harmless *969 error. Caperton, 556 U.S. at 876, 129 S.Ct. 2252; Aetna Life Ins. Co. v. Lavoie, 475 U.S. 818, 821-22, 106 S.Ct. 1580, 89 L.Ed.2d 823 (1986); Schmidt v. Bermudez, 5 So.3d 1064, 1072-73 (¶¶ 11-13) (Miss.2009).[13] In Jenkins, our supreme court acknowledged that every litigant is entitled to an impartial judge regardless of whether the interest is revealed by an inspection of the record or developed by evidence aliunde the record. Jenkins, 542 So.2d at 1181-82. The Jenkins court also explained that, where a reasonable person would harbor doubts regarding, a judge’s impartiality, the interests of justice are best served by recusal. Id. at 1181. See also Beyer, 738 So.2d at 228 (¶ 20) (discussing the objective test for recusal adopted in Jenkins).
¶ 47. In the present matter, the totality of the circumstances contributing to an appearance of judicial bias or prejudice include the following: (1) Judge Roberts’s extrajudicial social relationship and his activity of participating in hunting trips with Grace’s attorney from 2007 through April 8, 2009; (2) Judge Roberts’s nondisclosure of that extrajudicial activity to Toulman’s attorney in response to Toulman’s 2008 recusal motion or otherwise; (3) Judge Roberts’s assessment of sanctions under the Act against Toulman and his attorney for filing the 2008 recusal motion; (4) the appearance created by the discovery of the social relationship and activity by Toul-man’s attorney from a law enforcement officer, who was a nonparty to the matter; (5) the close proximity in time between the extrajudicial activity and the two April 2009 orders and related judgments at issue; and (6) the close identity of Smith and his firm with their client, Grace; (7) Judge Roberts’s comments during the case and his hostility with Toulman’s attorney; and (8) the combination of all these circumstances from the record in this contested matter. Additionally, Toulman’s 2008 recusal motion sets forth other matters and rulings that Toulman and his attorney claimed caused them to question Judge Roberts’s impartiality at that time.[14]
¶ 48, Interestingly, in his post-trial testimony, Smith revealed that he was not just Grace’s attorney but that he also possessed a close familial- relationship with Grace, her children, and her brother. Smith offered to the chancellor to serve as an alternative custodial placement for the Boatwrights’ children. Smith also testified that he attended the kindergarten graduation of Dunn, the parties’ youngest child, and that, among other personal contacts with Grace, planned to host the wedding of the parties’ daughter, Lynn, at his home. The record clearly shows that Smith and his wife, who served as his co-counsel, are closely aligned and closely identify with the party they represent.
¶49. With respect to the timing of Judge Roberts’s extrajudicial activity and the proceedings below, the record reflects that, after the three-day trial in February 2009 and after the hearing on March 10, 2009, Judge Roberts set a hearing date for April 9, 2009, for a writ of inquiry to *970 determine the amount- of attorney’s fees to award for the civil contempt asserted in Grace’s original petition. The day before the scheduled hearing for the writ,Toul-man’s attorney received a bill- for attorney’s fees from Grace’s attorney for $39,390.48 — an amount that included Smith’s fees for the recent trial in- February 2009. As the record further shows, Judge Roberts went hunting with' Smith oh April 8, 2009, and at approximately noon on April 8, 2009, Toulman’s attorney learned from a deputy sheriff that Judge Roberts had gone hunting with Smith-on Smith’s property. The totality of- the circumstances in this case must include consideration of the timing of all the hunting trips Judge Roberts took with Smith while this case was pending and the circumstances surrounding the revelation of Judge Roberts’s extrajudicial activities with Grace’s attorney.
¶ 50. As discussed, we must embrace that precedent, establishes that a review of the appearance of judicial bias or prejudice is distinct from a. review-for actual judicial bias or prejudice, and that a review of an appearance of judicial bias must be independently determined. See Caperton, 556 U.S. at 883-84, 129 S.Ct. 2252; Liljeberg v. Health Servs. Acquisition Corp., 486 U.S. 847, 859-61, 108 S.Ct. 2194, 100 L.Ed.2d 855 (1988); Aetna Life Ins. Co., 475 U.S. at 821-22, 106 S.Ct. 1580.
¶ 51. Mississippi Code of Judicial Conduct Canon 3(E)(1)(a) states:
Judges should disqualify themselves in proceedings 'in which their impartiality might be questioned by a reasonable person knowing all the circumstances or for other grounds provided in the Code of Judicial Conduct or otherwise as provided by law, including but not limited to instances where ... the judge has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding[.]
(Emphasis added). As the Supreme Court has explained, even though no actual bias may be shown, an appearance of bias can still rise to a' level where due process requires a new trial. See Caperton, 556 U.S. at 883-84, 129 S.Ct. 2252; Liljeberg, 486 U.S. at 859-61, 108 S.Ct. 2194.
¶ 52. The. objective appearance of partiality extends not only to the orders Judge Roberts executed in April 2009 but also to the prior rulings in the case since its filing in 2007.[15] Thus, a new trial is warranted in this ease. Judge Roberts’s extrajudicial activities started in 2006 before Grace filed the instant matter in October 2007, and his hunting trips with Smith continued during 2007 and occurred once in 2009 while the case was still pending before him. As stated, Judge Lancaster abused his discretion by an erroneous ap *971 plication of relevant caselaw and the objective test applicable to recusal; by limiting his review to only actual bias or prejudice; and by failing to determine whether, under the totality of the circumstances, reasonable doubt was objectively raised to a reasonable person as to Judge Roberts’s impartiality. Judge Lancaster erroneously failed to evaluate whether the circumstances objectively raised the appearance of bias or partiality. Therefore, Judge Lancaster abused his discretion by'failing to grant Toulman’s motion for a new trial. See Jenkins, 542 So.2d at 1181. Cf. Beyer, 738 So.2d at 227-28 (¶¶ 20-22) (discussing whether the trial, judge should have re-cused himself).
¶ 53. Judge Roberts’s sua sponte recu-sal on April 20, 2009, failed to cure the appearance of partiality impacting the integrity of his prior rulings in this matter since its filing in 2007. Cf. Murphy, 768 F.2d at 1538 (discussing that a judge’s familiarity with a prosecutor created the appearance of extensive personal contacts). As previously acknowledged, the Supreme Court has recognized the importance of the appearance of justice and-the right to an impartial judge. See Liljeberg, 486 U.S. at 859-61, 108 S.Ct. 2194. The Supreme Court has also explained that the public’s confidence in the justice system must be satisfied, and the risk of injustice to the parties must also be considered. Id. at 864, 108 S.Ct. 2194.
¶ 54. Mississippi Code of Judicial Conduct Canon 4(A) provides that “[a] judge shall conduct all of the judge’s [extrajudicial] activities so that they do not: (1) cast reasonable doubt on the judge’s capacity to act impartially as a judge; (2) demean the judicial office; or (3) interfere with the proper performance of judicial duties.” As the heading to Canon 4 reflects, a judge shall conduct the* judge’s extrajudicial activities so as to minimize the risk of conflict with judicial obligations. As recognized by Canon 4(A), the risk of conflict exists between judicial obligations and extrajudicial activities, and a conflict between judicial obligations and extrajudicial activities can arise without intention. ■ Thus, when extrajudicial activities and relationships create a question to a reasonable person knowing all the circumstances as to a judge’s impartiality in a pending matter, then the judge should disqualify himself. See Miss.Code Jud. Conduct Canon 3(E).[16]
¶ 55. Mississippi Code of Judicial Conduct Canon 1 also cautions that a judge shall uphold the integrity and independence of the judiciary. Canon 1 further acknowledges that an independent and honorable judiciary is indispensable to justice in our society. The comment to Canon 1 explains that “[p]ublic confidence in the impartiality of the judiciary is maintained'by the adherence of each judge to this responsibility.” The comment further explains that a violation of the Code of Judicial Conduct “diminishes public confidence in the judiciary and thereby does injury to the system of government under law.”[17] Upon facing the impact of’ his extrajudicial activities with an attorney in this matter, Judge Roberts upheld the integrity and independence of the judiciary by his sua sponte recusal order, and'we must now reverse and remand for a new trial to satisfy the demands of justice.
¶ 56. Based on a review of the record and applicable caselaw, I respectfully sub *972 mit that Judge Lancaster abused his discretion by denying Toulman’s motion for a new trial. We should therefore reverse and remand for a new trial.
LEE, C.J., AND IRVING, P.J., JOIN THIS OPINION.

. See Dependable Abrasives Inc. v. Pierce, 156 So.3d 891, 895 (¶ 12) (Miss.2015).

. See United States v. Bayless, 201 F.3d 116, 126-27 (2d Cir.2000); Miss. United Methodist Conference v. Brown, 929 So.2d 907, 909-10 (¶¶ 6, 13) (Miss.2006); Beyer v. Easterling, 738 So.2d 221, 228 (¶ 20) (Miss.1999); In re Moffett, 556 So.2d 723, 725 (Miss.1990); Jenkins v. Forrest Cnty. Gen. Hosp., 542 So.2d 1180, 1181-82 (Miss.1988).

. See Miss. United Methodist Conference, 929 So.2d at 909 (¶ 6); Dillard’s Inc. v. Scott, 908 So.2d 93, 98 (¶ 17) (Miss.2005); Jenkins, 542 So.2d at 1181-82.

. The bench ruling Judge Roberts issued on Toulman’s 2008 recusal motion acknowledged a plethora of orders and hearings since the parties divorced on May 12, 2004, and since the filing of the instant action on October 19, 2007.

. See Leaf River Forest Prods. Inc. v. Deakle, 661 So.2d 188, 195 (Miss.1995) (finding that *965 the fact a case is weak does not show that it was brought to harass); Nationwide Mut. Ins. Co. v. Evans, 553 So.2d 1117, 1120 (Miss.1989) (discussing the requirements for imposing sanctions for frivolous pleadings pursuant to Rule 11 of the Mississippi Rules of Civil Procedure); Miss.Code Ann. § 11-55-3(a) (Rev.2012) (establishing that " ‘[w]ithout substantial justification,’ ” when used with reference to any action, claim, defense or appeal, including without limitation any motion, means that it is frivolous, groundless in fact or in law, or vexatious, as determined by the court); Miss.Code Ann. § 11-55-5(1) (Rev. 2012) (requiring a filing to be found "without substantial justification”).

. As discussed, Toulman’s attorney filed a pri- or recusal motion on October 6, 2008. Judge Roberts denied the recusal motion and later entered an order imposing sanctions for the motion pursuant to the Act.

. See Steiner, 788 So.2d at 775 (¶ 9) (“The decision to recuse or not to recuse is one left to the sound discretion of the trial judge, so long as he applies the correct legal standards.” (quoting Bryan v. Holzer, 589 So.2d 648, 654 (Miss.1991))). Cf. Collins v. Joshi, 611 So.2d 898, 901 (Miss.1992) (finding reasonable doubt was raised regarding the trial judge’s bias due to his recusal in a similar case).

. See Miss.Code Jud. Conduct Canon 3(F) (discussing a judge’s remittal of disqualification). See also Stringer v. Astrue, 252 Fed.Appx. 645, 647-48 (5th Cir.2007) ("Recusal can be based on extrajudicial factors [such as] bias based on family relationships or other [extrajudicial] influences[.]”).

, See Miss. United Methodist Conference, 929 So.2d at 909 (¶ 6);. Jenkins, 542 So.2d at 1181. See also Stringer, 252 Fed.Appx. at 647-48 (stating that bias can be based on family relationships or other extrajudicial- influences or on. intrajudicial factors).

. A refusal to vacate the orders -Judge Roberts executed in April 2009 and to grant- a new trial would be inconsistent with substantial justice. See M.R.C.P. 61. See also Schmidt v. Bermudez, 5 So.3d 1064, 1065 (¶ 3) (Miss.2009) (remanding the case for a new trial because the defendant failed to receive a fair trial before an impartial tribunal); Steiner, 788 So.2d at 775 (¶ 12) (finding no abuse of discretion -where the chancellor followed the common practice of the- district and re-cused because one of the parties was a practicing attorney in the district); Beyer, 738 So.2d at 228 (¶ 22) (finding that, on-remand, it would be preferable for another judge to hear the case since one party to the case was a local attorney who had known the judge professionally’for a number of years).

. See Liteky v. United States, 510 U.S. 540, 555, 114 S.Ct. 1147, 127 L.Ed.2d 474 (1994) (establishing the extrajudicial-source rule).

. In Schmidt, the supreme court found the chancellor's cónduct in the proceedings of the case was inconsistent with substantial justice. Schmidt, 5 So.3d at 1074 (¶ 21). See also M.R.C.P. 61 (“[N]o error in any ruling or order or in anything done or omitted by the court or by any of the parties is ground for granting a new trial or for setting aside a verdict or for vacating, modifying, or otherwise disturbing a judgment or order, unless refusal to take such action appears to the court inconsistent with substantial justice.”).

. See UCCR 1.11 (discussing motions for the recusal of judges). See also In re Moffett, 556 So.2d at 724 (discussing the two-pronged re-cusal motion filed in Jenkins that was based on several extrajudicial matters).

. The majority opinion relies on Barnes v. Jefferson Davis County School District, 160 So.3d 1149 (Miss.2015), to support its finding that Judge Roberts did not err by entering the two April 2009. orders since the orders were entered nunc pro tunc to March 10, 2009, and since Judge Roberts made no further rulings after the need for recusal arose. However, I respectfully submit that Barnes is inapplicable to the facts of the present case. The instant litigation involves Judge Roberts’s extrajudicial activities with the attorney of a party in a pending matter. The decision and facts in Barnes pertain to a tort-claim case where the judge, who served as the factfinder in the first trial, recused after granting a post-trial motion for a new trial. Id. at 1152 (¶¶ 10-14). As the Barnes decision shows, the judge explained that he had gained too much knowledge during the course of the first trial to allow him to set aside his personal feelings when making further rulings in the .case. Id. Because Barnes fails to address the issue raised in the instant appeal — the extrajudicial conduct of a judge with a party or the attorney of a party in a pending matter — I respectfully submit that Barnes is inapplicable to the Boatwrights’ case.

. Cf. Jenkins, 542 So.2d at 1181.

. See Miller v. State, 94 So.3d 1120, 1123 (¶ 7) (Miss.2012) (stating that, when a judge’s conduct is being examined according to the dictates of a canon of the Code of Judicial Conduct, the canon enjoys the status of the law). See also Miss.Code Jud. Conduct Canon 3(E) (discussing disqualification).